**WAGONER et al., Appellants,**

v.

**OBERT et al., Appellees.**

[Cite as *Wagoner v. Obert*, 180 Ohio App.3d 387, 2008-Ohio-7041.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 07 CA 31.

Decided Dec. 31, 2008.

389

Michael O'Reilly, for appellants.

Stebelton, Aranda & Snider and John N. Snider, for appellees.

Maguire & Schneider, for appellees Winona Donnall and Home Connection Realty.

John Harker, for appellees Martin and Rosemary Kellenbarger.

EDWARDS, Judge.

{¶ 1} This appeal involves a dispute over two acres of property that are titled to appellants, Donald and Glenna Wagoner, and upon which appellees and cross-appellants, Michael and Rebecca Obert, constructed a leach bed for a household septic system. Both the Wagoners and the Oberts appealed the jury's verdict and the trial court's denial of their motions for judgment notwithstanding the verdict, or in the alternative, motions for new trial. Additional appellees are Winona Donnall and Home Connection Realty and Martin and Rosemary Kellenbarger.

STATEMENT OF FACTS AND CASE

{¶ 2} The facts and procedural history of the matter are as follows:

{¶ 3} This appeal concerns a dispute over approximately two acres of land located in Fairfield County, Ohio. The two-acre parcel in dispute was originally a portion of a 14–acre tract of land owned by Mr. and Mrs. Hill. In 1975, the Hills hired George Beiter to survey and split their 14–acre tract of land. As part of the survey protocol, Beiter used half-inch iron survey pipes to mark the boundary lines of the property. Beiter also prepared a legal description of the property and filed it with the Fairfield County Engineer's office.

{¶ 4} On May 17, 1975, appellees Martin and Rosemary Kellenbarger purchased 6.05 acres of the unimproved 14 acres of property from the Hills. Thereafter, Jeff McCandish purchased the remaining 7.96 acres of the original 14 acres owned by the Hills. In 1977, appellants, Donald and Glenna Wagoner, purchased the 7.96 acreage from McCandish. The 7.96 acres of property initially purchased by McCandish and later transferred to the Wagoners is located just north of the Kellenbargers' property.

{¶ 5} In 1975 and 1976, the Kellenbargers cleared the property, erected a house and shed, and fenced off what they believed to be the boundary of their property, which included the two acres in dispute. The address of the property is 7920 Dupler Road, Sugar Grove, Fairfield County, Ohio. As part of the home construction, the Kellenbargers paid for a septic tank for their home and believed that a septic tank had been installed, but they had no documentation of a related construction expense. Furthermore, the Fairfield County Department of Health has no record relative to any application being made by the Kellenbargers to install a private septic system or any record of a septic system being inspected by the agency.

{¶ 6} From 1975 until 2004, the Kellenbargers claimed that they made exclusive use of the land that they believed they had purchased from the Hills, including the approximately two acres in dispute. The Kellenbargers stated that they built a wood shed, raised goats, and built a dog kennel with a concrete pad on the two adjacent acres. Mr. Kellenbarger also stated that he hunted the entire property on a regular basis.

{¶ 7} On July 11, 2003, the Kellenbargers purchased a new residence in Fairfield County, Ohio, vacated the home at 7920 Dupler Road, and hired realtor Leanne Henry to list the now vacant property. On September 23, 2003, as part of the listing procedures, Henry reviewed, and the Kellenbargers executed, a form published by the Fairfield County Health Department stating the requirements for septic inspections. The septic-inspection form informs the home owner that if a home is being sold, an inspection of the septic system may be required

by the lending institution and/or the health department. The form further states that if the septic system has not been pumped within the last four years, "it must be pumped by a licensed septic pumper." Finally, the form advised the Kellenbargers that pursuant to Ohio Adm.Code 3701–29–07, a minimum capacity septic tank for a three-bedroom home must be 1,500 gallons in one- or two-tank compartments.

{¶ 8} The Kellenbargers also completed a residential property disclosure form in which they stated that the septic system servicing the property consisted of a leach field, that they did not know the date of the last septic-system inspection, and that they were unaware of any current leaks, backups, or other material problems with the septic system servicing the property. The Kellenbargers did not check the boxes on the residential disclosure form that would have indicated that their property was serviced with a septic tank or a private sewer, or that they had a general knowledge of the type of septic system that serviced the property. Finally, on the form, the Kellenbargers certified that there were no boundary disputes involving the property.

{¶ 9} The Kellenbargers' property at 7920 Dupler Road remained vacant for approximately a year. In April 2004, the Kellenbargers hired a new realtor, Winona Donnall of Home Connection Realty. Donnall asked the Kellenbargers to complete a new residential property disclosure form. On the new form, the Kellenbargers indicated that they had a private septic and filtration bed on the property and that they were not aware of any leaks, backups, or other material problems with the septic system. The Kellenbargers also left the box marked "septic tank" blank. Finally, the Kellenbargers certified that they were not aware of any boundary disputes.

{¶ 10} Appellees and cross-appellants, Michael and Rebecca Obert, began looking for acreage in Fairfield, Ohio. On July 17, 2004, the Oberts and the Kellenbargers executed a real estate purchase contract for the 6.05 tract of land located at 7920 Dupler Road. The purchase agreement gave the Oberts a 20–day inspection grace period.

{¶ 11} On August 1, 2004, Mr. Obert and Mr. Kellenbarger walked the property. Mr. Kellenbarger stated that he used red spray paint to mark the northernmost boundary of the property. Mr. Kellenbarger also showed Mr. Obert the supposed location of the underground septic system. Mr. Kellenbarger advised Mr. Obert that the septic tank was buried between the garage/pole barn and a large poplar tree. Mr. Kellenbarger also told Mr. Obert that the line to the leach field ran down the hill behind the garage.

{¶ 12} After the purchase contract was executed, realtor Winona Donnall contacted Independent Health Services ("IHS") to perform the necessary inspec-

tions. Donnall requested an inspection of the water well and the septic/aeration system, and a termite inspection.

{¶ 13} On August 3, 2004, Bruce Carpenter, a licensed sanitarian, conducted the requested inspections. Carpenter followed inspection protocols for water, sewer, and termite inspections. In a subsequent report, he stated that he was unable to find any septic tank risers and that he could not verify the size and/or type of the property's septic tank or leaching system. He further noted that the septic tank would need to be pumped and risers installed per Fairfield County regulations. In the report, he also stated that he did not locate any problems with the septic system, but that problems might not become apparent until daily operation of the system was resumed. Donnall received Carpenter's report but did not notify the Oberts of the septic concerns and/or insure that the septic tank was pumped and that risers were installed.

{¶ 14} On August 11, 2004, a mortgage survey was performed on the property pursuant to Ohio Adm.Code 4733–38–01.[1] The mortgage survey showed the true boundary of the 6.05–acre property. The true boundaries did not include the two acres of property in dispute. Instead, the mortgage survey showed that two acres of property in dispute along the northern boundary belonged to the Wagoners. The Oberts denied ever seeing the mortgage survey prior to the closing on the property.

{¶ 15} On August 13, 2004, the property closed. At the property closing, both the Oberts and the Kellenbargers initialed Carpenter's report. The Oberts paid the Kellenbargers $180,000 for the property and took immediate possession. The Oberts proceeded to maintain and use the two acres in dispute.

{¶ 16} On March 4, 2005, the Oberts received a $40 bill from the Fairfield County Health Department, advising them that they had not renewed their private-septic-system operation permit. The Oberts had never been advised that a septic-system permit was necessary for their property and contacted the Fairfield County Health Department for more information. Steve Deeter, a registered sanitarian employed by the health department, responded to the Oberts' property to conduct a septic-system inspection. Upon inspection, Deeter discovered that the property's sewage was being dumped at the end of a pipe approximately 150 feet from the Oberts' house into a ravine. Deeter did not find any septic system for the property and advised the Oberts that it was against

---

1. The mortgage survey was completed by Surveyor Scott D. Grundei of Landmark Survey Group and is common to the mortgage-lending industry, providing proof to the mortgage lender and/or title insurer as to the buildings and land in the legal description. It is a document required in a standard residential real estate closing.

county health regulations to live in a house that is not serviced by an approved septic system.

{¶ 17} The Oberts then worked with the Fairfield County Health Department to install a septic system. The leach system for the septic system was installed underground on the two-acre parcel of property that is in dispute, which the Oberts believed they owned, but which was legally titled to the Wagoners. They chose the two acres because it was the only other level area of land on which they could install a leach bed for the septic system.

{¶ 18} The excavation and other work for the septic system took place in May and June 2005. The cost of the new septic system was approximately $7,738.30.

{¶ 19} During this time, Mrs. Wagoner became aware that an area of property was being excavated by the Oberts. The Wagoners were concerned that the excavation was being done on their land. On or about June 15, 2005, the Wagoners hired surveyor Vince Evans to determine the extent, if any, of the encroachment. Evans's survey revealed an encroachment of 0.432 acres on the Wagoners' property by the Oberts' underground leach bed for the septic system.

{¶ 20} On or about June 29, 2005, after the septic system had been completely installed, the Wagoners informed the Oberts that the septic system's leach bed was encroaching on their property.

{¶ 21} After their conversation with the Wagoners, the Oberts hired George Beiter to come to the property and advise them as to the location of the boundary line between their property and the Wagoners' property. Beiter discovered that the original iron pins that he had set in 1970 along the boundary line had been moved north without his authority. Beiter's survey concurred with the survey completed by Evans that the two acres in dispute were within the property boundaries for the Wagoners' property.

{¶ 22} Having verified the boundary error, the parties tried to cure the problem and resolve the dispute through a sale of the encroached area, but the attempts at resolution were unsuccessful, and the Oberts did not move the leach bed. As a result, on October 6, 2005, the Wagoners filed an action for trespass, ejectment, and quiet title. In the first count of the complaint, the Wagoners stated that the Oberts had committed trespass by physically invading their real property when the Oberts built a leach field across the property line and onto their 7.96 acres of adjoining real estate. The relief sought by the Wagoners for the trespass included damages for trespass, a fair rental value for the use of the property, and an order of ejectment. In the second count, the Wagoners set forth a cause of action for quiet title.

{¶ 23} On November 3, 2005, the Oberts filed a timely answer and set forth the affirmative defenses of failure to state a cause upon which relief can be granted,

estoppel, laches, and waiver. The Oberts also filed a third-party complaint against the Kellenbargers for breach of contract, promissory estoppel, negligent misrepresentation, unjust enrichment, and fraud. The Oberts sought relief from the Kellenbargers in part for compensatory damages, punitive damages, and attorney fees.

{¶ 24} On February 2, 2006, pursuant to a scheduling order, the matter was set for trial on October 24, 2006. On April 4, 2006, depositions were held for the Kellenbargers, Oberts, and Wagoners.

{¶ 25} On April 19, 2006, the Oberts amended their third-party complaint to include realtor Winona Donnall and Home Connection Realty on the theory of professional negligence. Donnall filed a timely answer and filed a cross-claim against the Kellenbargers.

{¶ 26} On April 19, 2006, the Oberts also responded to the fourth interrogatory of the Wagoners' written discovery request, stating that the Wagoners had done nothing to assert ownership of the property at issue.[2]

{¶ 27} On August 18, 2006, the Wagoners moved for partial summary judgment, requesting the trial court to find that the Oberts had trespassed on their property by installing an underground leach bed and requesting an order of ejectment. The motion was supported by affidavits that asserted that there was no dispute about the location of the property line and argued that no landowner may acquire rights against a neighboring property for an encroaching septic system under the theories of prescriptive easement or adverse possession. In response, the Oberts stated that the Kellenbargers' adverse use for many years of the two acres in dispute, and continued use of the two acres, gave them the right to assert the affirmative defense of adverse possession against the Wagoners' trespass claim and to assert their right to have the leach bed remain on the two acres in dispute.

{¶ 28} On August 31, 2006, pursuant to Civ.R. 15(A), the Oberts and Kellenbargers filed a joint motion to amend the pleadings to assert a counterclaim against the Wagoners for adverse possession and quiet title. The Oberts and Kellenbargers also attached an "Action for Declaratory Judgment for Adverse Possession and Quiet Title" to the motion to amend, in which they moved to seek a

---

2. The interrogatory proposed by the Wagoners stated as follows: "State any affirmative defense pled by you against the Plaintiffs [and] A.) If you want to pursue it; B.) If so, what do you believe are the operative facts that support such a defense; and C.) What witness and documents do you intend to produce to prove such facts." The Oberts responded to the interrogatory as follows: "A.) Yes; B.) Wagoners have done nothing to assert their ownership of the property at issue for the past approximately 25 years. Wagoners only took action after the septic system was placed on the property. Wagoners have failed to timely exercise their rights relative to the real estate at issue."

declaration by the court, pursuant to the doctrine of adverse possession, that they are the owners of the property in dispute. On September 27, the Wagoners filed a response in opposition, arguing that the motion was made 60 days before trial, was untimely, and should be denied.

{¶ 29} On October 4, 2006, the trial court denied the Oberts' and Kellenbargers' joint motion to amend the pleadings. In support of the denial, the trial court stated that the motion had been filed less than 60 days prior to trial.[3]

{¶ 30} On October 19, 2006, the Oberts filed a motion in limine for an order barring any adverse party from commenting about, or attempting to use in any way, shape, or form, or attempting to enter into evidence a certain document known as a mortgage survey conducted in connection with the closing on the real estate at issue. In support, the Oberts argued that "given the specific definition of a mortgage survey given by the Ohio Administrative Code Section 4733–38–01, that a mortgage location survey is solely for the intent and use by the mortgagee and/or title insurer, it is improper to advance an argument that the buyers (Oberts) should have relied in any way, shape or form upon the representations made by the mortgage survey since they are not the mortgagee or the title insurer." The Kellenbargers filed a response in opposition.

{¶ 31} On October 20, 2006, the parties filed a joint motion for continuance of the trial date. That same date, the trial court granted the joint motion for continuance based upon the joint motion of the parties, the parties' agreement that mediation would be helpful in resolving the case, and the fact that a criminal case, *State v. Wiggins*, was set to be tried on that same date. The Oberts did not renew their motion to amend their counterclaim to include a cause of action for adverse possession after the continuance was granted. Furthermore, it appears that the Oberts never considered a claim for a prescriptive easement.

{¶ 32} On November 17, 2006, the matter was rescheduled for jury trial on February 6, 2007.

{¶ 33} On January 24, 2007, the trial court considered and denied the Wagoners' motion for partial summary judgment and the Oberts' motion in limine. The trial court held that as to the Wagoners' claim of legal ownership of the disputed land, summary judgment was not appropriate as "reasonable minds cannot come to but one conclusion regarding the issues in the matter." The trial court further

---

**3.** In the entry, the trial court stated as follows: "This matter comes before the Court upon the Joint Motion of Defendants Obert and Third–Party Defendants Kellenbarger to Amend Pleadings and to Assert a Counterclaim for Adverse Possession. Plaintiffs filed a memorandum in opposition. Upon consideration, and in light of the fact that this matter was set for trial on October 24, 2006, in February 2006 and the Defendants filed the present motion on August 31, 2006, less than sixty days prior to trial, Defendant's Motion to Amend Pleadings is DENIED, This matter shall proceed accordingly."

held that the evidence concerning the mortgage survey was not incompetent or improper.

{¶ 34} On February 2, 2007, prior to trial, the Wagoners filed a motion in limine to preclude any party from placing any evidence on the record relating to the theory of adverse possession. The trial court denied the motion and ruled that adverse possession could be presented as a defense to the Wagoners' claims but not as a counter or cross-claim of the Oberts or the Kellenbargers to establish ownership. After the presentation of evidence and prior to the jury deliberations, the trial court found that the property line as shown on the surveys established that the Wagoners held legal title to the area of property in dispute.

{¶ 35} After due deliberations, the jury found as follows. The Oberts did not commit a trespass against the Wagoners. The Kellenbargers were not responsible to the Oberts for any negligence claims. The Kellenbargers committed fraud against the Oberts. The jury awarded the Oberts the sum of $6,800 in compensatory damages and $0 in punitive damages and recommended an award of attorney fees. Finally, the jury found in favor of the Oberts against Donnall for the negligence claim and awarded the Oberts $1,197.97 in compensatory damages.

{¶ 36} Both the Wagoners and the Oberts filed timely motions for judgment notwithstanding the verdict ("JNOV") and for a new trial. In their motion, the Oberts argued that the jury's decision was against the manifest weight of the evidence and inconsistent as a matter of law. Specifically, the Oberts argued that the jury's verdict on the fraud claim granting $0 in punitive damages but recommending that the trial court grant attorney fees to the Oberts was inconsistent and indicated that the jury clearly lost its way. The Wagoners also argued that the jury's verdict was against the manifest weight of the evidence and contrary to law.

{¶ 37} On April 18, 2007, the trial court entered judgment as follows:

{¶ 38} "1. Six of the jurors found in favor of the Defendants, Michael and Rebecca Obert on the claim of Trespass asserted against them by the Plaintiffs, Donald and Glenna Wagoner;

{¶ 39} "2. Eight of the jurors found in favor of the Defendants/Third–Party Plaintiffs Michael and Rebecca Obert on the claim of Fraud asserted by them against the Third Party Defendants Martin and Rosemary Kellenbarger. The jury awarded $6,800.00 in compensatory damages, $0 punitive damages, and circled that the Kellenbargers are liable for the Oberts attorney's fees;

{¶ 40} "3. Eight of the jurors found in favor of the Third–Party Defendants Martin and Rosemary Kellenbarger on the claim of Negligence asserted against them by the Defendants/Third–Party Plaintiffs Michael and Rebecca Obert;

{¶ 41} "4. Eight of the jurors found in favor of the Defendants/Third–Party Plaintiffs Michael and Rebecca Obert on the claim of Negligence asserted by them against the Third Party Defendant Winona Donnall dba Home Connection Realty. The jury awarded $1,197.67 in compensatory damages.

{¶ 42} "Wherefore, the Court enters judgment as follows:

{¶ 43} "In favor of the Plaintiffs Donald Wagoner and Glenna Wagoner on the claim of Possession asserted by them against the Defendants Michael Obert and Rebecca Obert;

{¶ 44} "In favor of the Defendants Michael and Rebecca Obert on the claim of Trespass asserted against them by the Plaintiffs, Donald Wagoner and Glenna Wagoner;

{¶ 45} "$6,800.00 in favor of the Defendants/Third–Party Plaintiffs Michael Obert and Rebecca Obert on the claim of Fraud asserted by them against the Third Party Defendants Martin Kellenbarger and Rosemary Kellenbarger, to-gether with interest at the statutory rate from the date of filing of this Judgment Entry, and for the costs of this case to be equally divided with the Third–Party Defendant Winona Donnall dba Home Connections Realty;

{¶ 46} "In favor of the Third–Party Defendants Martin Kellenbarger and Rosemary Kellenbarger on the claim of Negligence asserted against them by the Defendants/Third–Party Plaintiffs Michael Obert and Rebecca Obert;

{¶ 47} "$1,197.67 in favor of the Defendants/Third–Party Plaintiffs Michael and Rebecca Obert on the claim of Negligence asserted by them against the Third–Party Defendant Winona Donnall dba Home Connection Realty, together with interest at the statutory rate from the date of filing of this Judgment Entry, and for the costs of this case to be equally divided with the Third–Party Defendants Martin and Rosemary Kellenbarger."

{¶ 48} That same date, the trial court issued a judgment denying the motions for JNOV and the motions for a new trial.

{¶ 49} Appellants, Donald and Glenna Wagoner, and appellees and cross-appellants, Michael and Rebecca Obert, filed timely appeals of the trial court's final judgments. Appellees Winona Donnall and Home Connection Realty and Martin and Rosemary Kellenbarger did not appeal the final judgment.

{¶ 50} Appellants, Donald and Glenna Wagoner, set forth the following assign-ments of error:

{¶ 51} "I. The trial court erred by failing to follow case law which prohibits the use of the prescription, adverse possession, and similar doctrines to obtain land for sewage disposal.

{¶ 52} "II.   The trial court erred in failing to find that public policy as stated in regulations of the Ohio Department of Health prohibits courts from allowing litigants the use of prescription, adverse possession, and similar doctrines to obtain land for sewage disposal.

{¶ 53} "III.   The trial court erred in failing to find that public policy as stated in regulations of the Ohio Department of Health prohibits courts from allowing litigants the use of prescription, adverse possession, and similar doctrines to obtain land for sewage disposal."

{¶ 54} Appellees and cross-appellants, Michael and Rebecca Obert, set forth the following assignments of error:

{¶ 55} "I.   The court committed error and abused its discretion in denying the joint motion of the Oberts and the Kellenbargers to amend the pleadings to assert a claim of adverse possession against defendants Wagoner.

{¶ 56} "II.   The trial court erred to the prejudice of appellant Oberts in overruling its motion for judgment notwithstanding the verdict relative to the issue of Kellenbarger's liability for punitive damage which had the practical effect of barring Oberts from recovering their attorney's fees from Kellenbarger.

{¶ 57} "III.   The trial court erred to the prejudice of appellants Oberts by overruling their motion for a new trial.

{¶ 58} "IV.   Certain findings of the jury and/or court which were embodied in the judgment entry of April 18, 2007 are both against the manifest weight of the evidence and prejudicial to appellants Obert.

{¶ 59} "V.   The court committed error to the prejudice of the Oberts by admitting into evidence the mortgage survey conducted immediately before the Kellenbarger/Obert closing."

{¶ 60} We shall first address the Wagoners' assignments of error.

I

{¶ 61} In appellants' first assignment of error, the Wagoners argue that the trial court erred in permitting the Oberts to assert the affirmative defense of adverse possession against their action for trespass when the trespass claim was based solely on the Oberts' installation of a septic-system underground leach bed on .432 acres of their adjacent property.   The appellants argue that use of prescription, adverse possession, and similar doctrines cannot be used to obtain land for sewage disposal, citing in support *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 63 N.E. 86, and *Morris v. Andros,* 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147.   As such, appellants argue that the trial court abused its discretion in failing to grant their motion for summary judgment and/or JNOV.

{¶ 62} In response, appellees argue that their use of adverse possession as an affirmative defense is based upon the initial use of the property by the Kellenbargers, which they tacked on to their continued use of the property for storage, daily recreational purposes, and an underground leach bed. The Oberts argue that the trial court did not abuse its discretion in permitting the use of adverse possession as an affirmative defense and in denying appellants' motions for summary judgment and/or motion for JNOV.

{¶ 63} We will first address our standards of review for summary judgment motions and for motions for JNOV.

{¶ 64} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays* (2000), 140 Ohio App.3d 1, 746 N.E.2d 618, citing *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212; *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188, 699 N.E.2d 534. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Id. at 192, 699 N.E.2d 534, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 65} The decision to grant or deny a Civ.R. 50(B) motion for JNOV is reviewed de novo.[4] *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 504 N.E.2d 19 (equating the test regarding review of a JNOV to the test applied to review a directed verdict). Directed verdict is reviewed de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 4 (setting forth the standard for directed verdict). JNOV is proper if upon viewing the evidence in a light most favorable to the nonmoving party and presuming any doubt to favor the nonmoving party, reasonable minds

---

4. Civ.R. 50(B) states as follows: (B) "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."

could come to but one conclusion, that being in favor of the moving party. Civ.R. 50(B); *Goodyear* at ¶ 3. Such a decision does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion. *Goodyear* at ¶ 4. "Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [JNOV]." *Osler*, 28 Ohio St.3d at 347, 28 OBR 410, 504 N.E.2d 19, quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334.

{¶ 66} To acquire real property by adverse possession, a party must establish, by clear and convincing evidence, that he has possessed the land in an open, notorious, exclusive, adverse, and continuous manner for at least 21 years. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 579, 692 N.E.2d 1009. Each case of adverse possession turns upon its own particular set of facts. *Didday v. Bradburn* (Feb. 22, 2000), Clermont App. Nos. CA99–05–049 and CA99–06–059, 2000 WL 197245. In *Grace v. Koch,* the Supreme Court explained that claims of adverse possession should be disfavored because a successful claim results in a legal title holder forfeiting ownership to an adverse holder without compensation. *Grace v. Koch* at 580, 692 N.E.2d 1009.

{¶ 67} An individual may "tack" to his period of adverse use the adverse use by previous owners in privity with him. *Lyman v. Ferrari* (1979), 66 Ohio App.2d 72, 76, 20 O.O.3d 138, 419 N.E.2d 1112, citing *Zipf v. Dalgarn* (1926), 114 Ohio St. 291, 296, 151 N.E. 174. Adverse possession protects not only those who knowingly appropriate others' land, but also those who honestly enter and possess land in the belief that it is their own. *Raymond v. Cary* (1989), 63 Ohio App.3d 342, 343, 578 N.E.2d 865. See also *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298, 299, 27 OBR 343, 500 N.E.2d 876, citing *Yetzer v. Thoman* (1866), 17 Ohio St. 130, 1866 WL 47.

{¶ 68} Adverse possession may be asserted as an affirmative defense to bar the owner of record title from asserting title by reason of the running of a 21–year statute of limitations. *Nathaniel Soifer, M.D. Assoc., Inc. v. Mink* (June 12, 1978), Montgomery App. No. 5737, 1978 WL 216206. See also *Rhodes v. Gunn,* 35 Ohio St. 387, 391; *Kyser v. Cannon,* 29 Ohio St. 359. In order to establish adverse possession, there must have been an intention on the part of the person in possession to claim title, "so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." *Grace v. Koch,* 81 Ohio St.3d at 581, 692 N.E.2d 1009; see also *Bravard v. Curran,* 155 Ohio App.3d 713, 2004-Ohio-181, 803 N.E.2d 846, ¶ 11 (merely mowing the grass or

engaging in minor landscaping is insufficient in itself to establish adverse possession).

{¶ 69} Appellants argue that adverse possession cannot be asserted as an affirmative defense when the adverse use is for sewage disposal, citing *Mansfield v. Balliett*, 65 Ohio St. 451, 63 N.E. 86, and *Morris v. Andros*, 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147. We do not find these cases to be persuasive because the affirmative defense asserted in the case sub judice was based on the adverse use by the Kellenbargers and the Oberts for daily recreational activities, the construction of a storage shed, the construction of a dog kennel, and, in part, sewage disposal.

{¶ 70} In *Mansfield v. Balliett*, Balliett brought an action against the city of Mansfield to recover damages for an alleged nuisance caused by the drainage of the city's sewage from a population of approximately 18,000 people into a natural watercourse, known as "Rocky Fork of the Mohican River," that ran through Balliett's property. Balliett argued that prior to the construction of the city's sewage drainage system, the stream came from natural springs of water and was pure and wholesome and of great continuing value to Balliett for the purpose of watering his stock. Balliett argued that the sewage emptied into the stream poisoned, polluted, and rendered the water unwholesome and unfit for ordinary use. The city argued that "[t]he right of [Balliett] to have the water descend on him in its pristine clearness must yield to the demands of a denser population and the march of civilization."

{¶ 71} Upon review, the Supreme Court found that the issue in *Mansfield v. Balliett* pertained to a property owner's riparian rights and the constitutional right to compensation for damages caused by a municipality's "taking" of the private property for public use. The court found that pursuant to the doctrine of eminent domain, private property such as a waterway may be acquired for public use. However, the court reasoned that once vested, these riparian rights can be taken for public use only when just compensation is made. The court further reasoned that " '[t]he pollution of water by artificial drainage which causes sewage to flow into a stream, spring or well, whether done by a municipal corporation or an individual, constitutes a nuisance which entitles the owner to damages therefor, the rule being that a municipal corporation has no more right to injure the waters of a stream or the premises of an individual than a natural person.' " *Mansfield v. Balliett*, 65 Ohio St. at 467, 63 N.E. 86, quoting Wood, A Practical Treatise on the Law of Nuisances (1875) Section 427. The court adopted the reasoning that "when in the lawful exercise of these powers private property must be injured for the common benefit of all, all should be held liable to make reparation." *Mansfield v. Balliett* at 478, 63 N.E. 86.

{¶ 72} In *Morris v. Andros,* 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147, James Morris and his wife filed a declaratory judgment action against Edward Andros and his wife for trespass, ejectment, and nuisance abatement. The controversy involved a shared property boundary. Morris complained that Andros had constructed a septic system whereby a septic line that originated on Andros's property protruded through a hillside located on Morris's property and deposited septic waste on Morris's property. Morris argued that he had not given Andros permission to install the septic system and that the septic system was unreasonably altering the drainage across his property. In a posthearing brief, Andros raised a claim for a prescriptive easement for his septic-discharge system and asserted ownership by adverse possession to the disputed one-half acre of property. The trial court ruled that Andros was entitled to a prescriptive easement but had failed to state a claim to take title by way of adverse possession.

{¶ 73} On appeal, Andros argued that the trial court erred in ruling that he had failed to establish a claim for adverse possession. The appellate court affirmed the trial court's decision, finding in part that Andros had failed to prove exclusive use of the property for 21 years. The court found that the evidence established that a prior owner had run a septic system on Morris's property. However, the evidence also established that the prior owner was not trying to take the property. Therefore, the appellate court found that Andros was the first person who had tried to take the property for septic purposes and, therefore, had failed to establish an adverse use for 21 years.

{¶ 74} On cross-appeal, Morris argued that the trial court erred as a matter of law when it granted Andros a prescriptive easement for the purpose of allowing Andros to dump his septic discharge onto Morris's land. Specifically, Morris argued that the prescriptive easement was contrary to the rule of law set forth in *Vian v. Sheffield Bldg. & Dev. Co.* (1948), 85 Ohio App. 191, 40 O.O. 144, 88 N.E.2d 410.

{¶ 75} The court applied the prior holding in *Vian.* In *Vian,* the court held that "one may not obtain by prescription, or otherwise than by purchase, a right to cast sewage upon the lands of another without his consent." *Vian,* 85 Ohio App. at 198, 40 O.O. 144, 88 N.E.2d 410. In *Andros,* 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147, the court reaffirmed the *Vian* decision and held that the trial court's decision granting Andros a prescriptive easement to discharge septic waste onto Morris's property was improperly granted and that such an easement is unobtainable as a matter of law. See also *Bey v. Wright Place Inc.* (1956), 108 Ohio App. 10, 9 O.O.2d 90, 160 N.E.2d 378.

{¶ 76} We find that neither *Mansfield v. Balliett,* 65 Ohio St. 451, 63 N.E. 86, nor *Morris v. Andros,* 158 Ohio App.3d 396, 2004-Ohio-4446, 815 N.E.2d 1147, is

persuasive in the case sub judice. The evidence presented in response to appellant's motion for summary judgment and at trial established that both the Oberts and the Kellenbargers had used the property for sewage disposal and had posted fencing, erected both a storage building and a dog kennel, and had maintained and used the property in dispute.

{¶ 77} Accordingly, we do not find that the trial court abused its discretion in permitting the Oberts to assert the defense of adverse possession to the trespass claim. We further find that the trial court did not err as a matter of law in denying appellant's motion for summary judgment and/or JNOV.

{¶ 78} Appellants' first assignment of error is not well taken and is hereby overruled.

## II

{¶ 79} In the second assignment of error, the Wagoners argue that the trial court abused its discretion in failing to find that public policy as stated in the regulations of the Ohio Department of Health prohibit the use of prescription, adverse possession, and similar doctrines to obtain land for sewage disposal. The Wagoners further argue that as such, the trial court erred as a matter of law in denying their motions for summary judgment and JNOV.

{¶ 80} Specifically, the Wagoners argue that the Ohio Department of Health regulations in effect when the Oberts installed their leach bed on their property "make it clear that leach fields which go over property lines must be the subject of recorded easement and/or written consent obtained on a voluntary basis from the adjoining property owner" citing Ohio Adm.Code 3701–29–02. The Wagoners further argue that by allowing the Oberts' adverse-possession defense to stand, the lower court countenanced an act by the county health department that was clearly ultra vires, i.e., the county health department's issuance of the permit to the Oberts to install their leach field occurred without enforcing the requirement for an easement.

{¶ 81} In response, the Oberts argue that Ohio Adm.Code 3701–29–02, entitled "Easement Requirement," does not apply to this situation. In the alternative, the Oberts argue that if the Ohio Administrative Code does not apply, the county health department could grant a variance upon a showing of practical difficulties. Finally, the Oberts argue that the Wagoners' failure to timely object to the excavation effectively estopped them from complaining about the location of the leach bed.

{¶ 82} Ohio Adm.Code 3701–29–02(E) prohibits the discharge of raw sewage onto open ground and states as follows:

{¶ 83} "(E) No person shall discharge, or permit to be discharged, treated or untreated sewage, the overflow drainage or contents of a sewage tank, or other putrescible, impure, or offensive waste into an abandoned water supply, well, spring, or cistern or into a natural or artificial well, sink hole, crevice, or other opening extending into limestone, sandstone, shale, or other rock formation, or normal ground water table."

{¶ 84} Ohio Adm.Code 3701–29–02(G), entitled "Easement Requirements," states as follows:

{¶ 85} "(G) Off-lot disposal of sewage effluent shall not be permitted except where the installation of an on-lot system is not possible, as specified in paragraph (A) of rule 3701–29–10, paragraph (B) of rule 3701–29–10, and paragraph (B) of rule 3701–29–11 of the Administrative Code, and the following conditions are met:

{¶ 86} "(1) When off-lot disposal of sewage effluent requires the crossing of adjacent properties to reach the point of discharge a recorded easement or the use of a legally established, publicly maintained drainage improvement from the dwelling lot line to the point of discharge shall be required.

{¶ 87} "(2) Written permission to discharge sewage effluent from the person or persons in control of the property or properties at the point of discharge shall be required * * *."

{¶ 88} Ohio Adm.Code 3701–29–01 defines the point of discharge as follows:

{¶ 89} "(T) 'Point of Discharge' means the point at which the effluent from a household sewage disposal system or curtain drain enters a public ditch or discharges to the surface of the ground or to a body of water."

{¶ 90} Ohio Adm.Code 3701–29–20, entitled "Variance," states as follows:

{¶ 91} "The board of health may grant a variance from the requirements of rules 3701–29–01 to 3701–29–21 of the Administrative Code (Ohio Sanitary Code) as will not be contrary to the public interest, where a person shows that because of practical difficulties or other special conditions their strict application will cause unusual and unnecessary hardship. However, no variance shall be granted that will defeat the spirit and general intent of said rules, or be otherwise contrary to the public interest."

{¶ 92} Essentially, appellants argue that by permitting the use of adverse possession as an affirmative defense to trespass, the trial court negates the administrative requirement that the health department, prior to the issuance of a permit, must first determine whether there is an existing easement, a necessary public drainage use, or written permission from the adjacent property owner. We disagree.

{¶ 93} Upon a review of the record, it does not appear that the Oberts have requested a variance from the board of health. It also does not appear that the Oberts have been served with a notice of violation of the Ohio Administrative Code. However, it does appear that a variance is required or a violation has occurred because the Ohio Revised Code regulation at issue strictly applies to the discharge of effluent in three specific circumstances including discharge onto the surface of the ground, discharge into a public ditch, or discharge into a body of water.

{¶ 94} In the case sub judice, the evidence established that the Oberts' leach bed was installed underground and cured a waste-disposal system that was discharging sewage into a ravine on the Wagoners' adjacent private land. Therefore, the leach bed itself, which is the origin of the alleged trespass, does not appear to violate the OAC regulation. Accordingly, the trial court did not abuse its discretion by allowing the Oberts to assert adverse possession as an affirmative defense to the installation of an underground leach bed that does not appear to violate nor negate the administrative regulations of the OAC. Accordingly, the trial court did not err as a matter of law in overruling the Wagoners' motion for summary judgment and motion for JNOV.

{¶ 95} For these reasons, we do not find appellants' argument well taken and hereby overrule the second assignment of error.

### III

{¶ 96} In the third assignment of error, the Wagoners argue that the trial court erred in denying their motion for JNOV based on their argument that existing adverse possession and prescriptive case law should be modified to conform with the Ohio Supreme Court's ruling in *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115. The Wagoners argue that eminent-domain law is analogous to adverse-possession law.

{¶ 97} In response, the Oberts state that the Wagoners are attempting to advance a public-policy argument that adverse possession should be abandoned in Ohio. Appellees urge this court to disregard this argument based on the decision by the Ohio Supreme Court in *Houck v. Bd. of Park Commrs. of Huron Cty. Park Dist.,* 116 Ohio St.3d 148, 2007-Ohio-5586, 876 N.E.2d 1210.

{¶ 98} In *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, the city of Norwood filed an eminent-domain action against a private landowner to appropriate their property for just compensation and transfer the property to a private developer as part of an urban-redevelopment plan for a deteriorating area. Judgment was entered for the city, and the landowner appealed.

{¶ 99} The Fifth Amendment to the United States Constitution addresses eminent domain and states that "[n]o person shall be * * * deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The amendment confirms the sovereign's authority to take, but conditions the exercise of that authority upon satisfaction of two conjunctive standards: that the taking is for "public use" and that "just compensation" for the taking is given to the property owner. *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 40.

{¶ 100} In *Norwood,* the court addressed in part whether economic or financial benefit alone is sufficient to satisfy the "public use" requirement. The Supreme Court held that an economic or financial benefit alone is insufficient to satisfy the public-use requirement of Section 19, Article I of the Ohio Constitution and that any taking based solely on financial gain is void as a matter of law, and the courts owe no deference to a legislative finding that the proposed taking will provide financial benefit to the community. *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 80.

{¶ 101} In *Houck,* landowners brought an action against the county park district to quiet title based on adverse possession of abandoned railroad property. The trial court entered judgment in favor of the park districts, and the landowners appealed. The issue before the Supreme Court was whether real property owned by a park district established under R.C. Chapter 1545 can be acquired by adverse possession. The court reaffirmed the decision in *Heddleston v. Hendricks* (1895), 52 Ohio St. 460, 40 N.E. 408, recognizing that a government entity should not be expected to be as vigilant in monitoring its property for trespassers as a private property owner. *Heddleston* at 465, 40 N.E. 408.

{¶ 102} The *Houck* court also recognized that " '[a]dverse [p]ossession represents the forced infringement of a landowner' rights, a decrease in value of the servient estate, the encouraged exploitation and development of land, the generation of animosity between neighbors, a source of damage to land or loss of land ownership, the creation of forced, involuntary legal battles, and uncertainty and perhaps the loss of property rights to landowners with seisin.' " *Houck,* 116 Ohio St.3d 148, 2007-Ohio-5586, 876 N.E.2d 1210, ¶ 29, quoting *Grace v. Koch* (Oct. 9, 1996), Hamilton App. No. C–950802, 1996 WL 577843, *2.

{¶ 103} Ultimately, the *Houck* court held that "permitting adverse possession of park-district property is against public policy and the legal principles underlying adverse possession." *Houck,* 116 Ohio St.3d 148, 2007-Ohio-5586, 876 N.E.2d 1210, ¶ 30. Accordingly, the court held that property owned by a park district established pursuant to R.C. 1545 is not subject to adverse possession. Id. (Pfeifer, J., dissenting.) Although presented with the opportunity, the Supreme Court did not disregard adverse possession altogether as being against public

policy. See also *Law v. Lake Metroparks,* Lake App. No. 2006–L–072, 2006-Ohio-7010, 2006 WL 3833863, affirmed (for the reasons set forth in *Houck v. Bd. of Park Commrs. of Huron Cty. Park Dist.),* 116 Ohio St.3d 322, 2007-Ohio-6749, 878 N.E.2d 1046.

{¶ 104} Because the *Houck* court declined to abandon adverse possession as being against public policy, we likewise decline to find adverse possession against public policy in this case. Therefore, we find appellants' third assignment of error to be without merit. Accordingly, appellants' assignment of error is hereby overruled.

## THE OBERTS' CROSS–APPEAL

### I

{¶ 105} In the first assignment of error on cross-appeal, the Oberts argue that the trial court abused its discretion in denying their joint motion with the Kellenbargers to amend their complaint to include a cause of action for adverse possession against the Wagoners. The Oberts argue that the trial court's ruling has left the parties in a "legal quagmire as to what their respective rights are to control the two acres that are at issue."

{¶ 106} A trial court's determination whether to grant a motion for leave to amend a complaint will not be reversed on appeal absent an abuse of discretion. *Darulis v. Ayers* (Feb. 2, 1999), 5th Dist. No. 1996CA00398, 1999 WL 669240, citing *Csejpes v. Cleveland Catholic Diocese* (1996), 109 Ohio App.3d 533, 541, 672 N.E.2d 724. To demonstrate abuse of discretion in denying a motion for leave to amend a complaint, an appellant must demonstrate more than error of law and that the trial court's denial of the motion was unreasonable, arbitrary, or unconscionable. Id.

{¶ 107} Pursuant to Civ.R. 15(A),

{¶ 108} "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

{¶ 109} The Ohio Supreme Court has held that "[i]t is an abuse of discretion for a court to deny a motion, timely filed, * * *, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed." *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113, paragraph six of the syllabus.

{¶ 110} The Ohio Supreme Court refined the holding in *Peterson* by adopting the test found in *Solowitch v. Bennett* (1982), 8 Ohio App.3d 115, 117, 8 OBR 169, 456 N.E.2d 562, that " 'there must be at least a *prima facie* showing that the movant can marshal support for the new matters sought to be pleaded, and that the amendment is not simply a delaying tactic, nor one which would cause prejudice to the defendant.' " *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, syllabus.

{¶ 111} While Civ.R. 15(A) allows for liberal amendment, the trial court does not abuse its discretion if it denies a motion to amend pleadings if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377, paragraph two of the syllabus; *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261.

{¶ 112} In this case, on February 2, 2006, pursuant to a scheduling order, the matter was set for trial on October 24, 2006.

{¶ 113} On April 4, 2006, depositions were held for the Kellenbargers, Oberts, and Wagoners.

{¶ 114} On April 19, 2006, the Oberts amended their third-party complaint to include realtor Winona Donnall and Home Connection Realty on the theory of professional negligence. Donnall filed a timely answer and filed a cross-claim against the Kellenbargers.

{¶ 115} On April 19, 2006, the Oberts also responded to the fourth interrogatory of the Wagoners' written discovery request stating that the Wagoners had done nothing to assert ownership of the property at issue.

{¶ 116} On August 31, 2006, pursuant to Civ.R. 15(A), the Oberts and Kellenbargers filed a joint motion to amend the pleadings to assert a counterclaim against the Wagoners for adverse possession and quiet title. The Oberts and Kellenbargers also attached an "Action for Declaratory Judgment for Adverse Possession and Quiet Title" to the motion to amend in which they moved to seek a declaration by the court, pursuant to the doctrine of adverse possession, that they were the owners of the property in dispute.

{¶ 117} On September 27, 2006, the Wagoners filed a response in opposition, arguing that the motion had been filed 60 days before trial and that the Oberts

could not support their claim for adverse possession by clear and convincing evidence. In conclusion, the Wagoners argued that "given the late filing and the doubtfulness that the exacting evidentiary standard could be met the court should deny leave."

{¶ 118} On October 4, 2006, the trial court denied the Oberts' and Kellenbargers' joint motion to amend the pleadings. In support of the denial, the trial court stated that the motion had been filed less than 60 days prior to a trial that had been scheduled back on February 2, 2006.

{¶ 119} The trial date was subsequently continued by the court so that the parties could engage in mediation. The Oberts did not renew their request to amend the complaint to include a cause of action for adverse possession.

{¶ 120} In the case sub judice, appellants moved to amend their complaint on August 31, 2006, less than 60 days before the scheduled trial date. This short notice gave the opposing party limited time to prepare for the presentation of a defense that potentially created undue prejudice to the opposing party. Accordingly, we do not find the trial court's denial of appellant's motion to amend to be unreasonable, arbitrary, or unconscionable.

{¶ 121} Accordingly, we do not find the Oberts' first assignment of error on the cross-appeal to be well taken. Cross-appellants' first assignment of error is hereby overruled.

II

{¶ 122} In the second assignment of error in the cross-appeal, the Oberts argue that the trial court abused its discretion in denying their motion for JNOV relative to the issue of the Kellenbargers' liability for punitive damages. The Oberts argue that the practical effect of the trial court's decision is to bar the Oberts from recovering their attorney fees from the Kellenbargers.

{¶ 123} The standard of review for a JNOV is as follows:

{¶ 124} The decision to grant or deny a Civ.R. 50(B) motion for JNOV is reviewed de novo. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 504 N.E.2d 19 (equating the test regarding review of a JNOV to the test applied to review a directed verdict); directed verdict is reviewed de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 4 (setting forth the standard for directed verdict). JNOV is proper if upon viewing the evidence in a light most favorable to the nonmoving party and presuming any doubt to favor the nonmoving party, reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 50(B); *Goodyear* at ¶ 3. Such a decision does not determine factual issues, but only questions of law, even though it is necessary to review and consider the

evidence in deciding the motion. *Goodyear* at ¶ 4. " 'Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [JNOV].' " *Osler*, 28 Ohio St.3d at 347, 28 OBR 410, 504 N.E.2d 19, quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d at 271, 275, 74 O.O.2d 427, 344 N.E.2d 334.

{¶ 125} In the motion for JNOV, the Oberts moved the trial court to reopen the jury's judgment and change the jury's award of $0 in punitive damages to a nominal award of $10 in punitive damages, thereby making the Oberts eligible for an award of attorney fees.[5]

{¶ 126} In support, the Oberts made several arguments. First, the Oberts argued that the verdicts and jury interrogatories established that a unanimous jury rejected the Oberts' claim of negligence against the Kellenbargers and instead found in favor of the Oberts on the claim of fraud against the Kellenbargers. Second, they argued that testimony was presented that their damages included attorney fees. Third, they argued that the jury's verdict form and interrogatories establish that it was the jury's intention to award the Oberts attorney fees on the fraud claim, thereby supporting a nominal award of punitive damages. Finally, they argued that there was sufficient evidence to support a finding by the jury of malice, ill-will, or wrongdoing that was particularly gross or egregious on the part of the Kellenbargers for the imposition of punitive damages.

{¶ 127} In their first argument, the Oberts state that the verdicts and jury interrogatories established that a unanimous jury rejected the Oberts' claim of negligence against the Kellenbargers and instead found in favor of the Oberts on the claim of fraud against the Kellenbargers. We agree.

{¶ 128} The verdict filed by the trial court on April 18, 2006, stated as follows:

{¶ 129} "2. Eight of the jurors found in favor of the Defendants/Third–Party Plaintiffs Michael and Rebecca Obert on the claim of Fraud asserted by them against the Third Party Defendants Martin and Rosemary Kellenbarger. The jury awarded $6,800.00 in compensatory damages, $0 punitive damages, and circled that the Kellenbargers are liable for the Oberts attorney's fees;

{¶ 130} "3. Eight of the jurors found in favor of the Third–Party Defendants Martin and Rosemary Kellenbarger on the claim of Negligence asserted against them by the Defendants/Third–Party Plaintiffs Michael and Rebecca Obert."

---

5. During the trial, cross-appellants' counsel asked the trial court to send the jury back to reconsider their award of $0 in punitive damages and the recommendation for attorney fees. The trial court declined to return the matter for further consideration. Although cross-appellants bring this to the attention of this court, the trial court's denial of cross-appellants' request to return the matter to the jury is not assigned as error on appeal.

{¶ 131} We agree with the Oberts' statement. But, to obtain an award of punitive damages following a finding of fraud, additional findings must be made by the jury. Therefore, a finding of fraud, in and of itself, does not support the grant of a JNOV for an award of nominal punitive damages.

{¶ 132} Second, the Oberts argue that they presented evidence that their damages included attorney fees. Third, they argue that the jury's verdict form and interrogatories that provide for the reimbursement of attorney fees support their motion for JNOV to award nominal punitive damages. We disagree.

{¶ 133} In establishing a claim for punitive damages in an action for fraud, the plaintiff must demonstrate, in addition to proving the elements of the tort itself, " 'that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious.' " *Davis v. Sun Refining & Marketing Co.* (1996), 109 Ohio App.3d 42, 58, 671 N.E.2d 1049, quoting *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph three of the syllabus. Ohio law provides that when punitive damages are proper, an aggrieved party may also recover reasonable attorney fees. *Columbus Fin., Inc. v. Howard* (1975), 42 Ohio St.2d 178, 71 O.O.2d 174, 327 N.E.2d 654; see also *Maynard v. Eaton Corp.*, Marion App. No. 9–03–48, 2004-Ohio-3025, 2004 WL 1302314. However, although a jury may be asked whether they would recommend an award of attorney fees when malicious acts have led to an award of punitive damages, it is the trial court that determines what, if any, amount shall be awarded. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 41, 543 N.E.2d 464.

{¶ 134} During the trial, the court gave the following instruction with regard to punitive damages:

{¶ 135} "If you find that the Oberts have proven by clear and convincing evidence all of the elements of fraud, your verdict must be for them and you will then consider damages and whether or not the Kellenbargers should be responsible for the Oberts' punitive damages and attorney fees. However, if you find that the Oberts failed to prove by clear and convincing evidence any one or more of the elements of fraud, or if you are unable to determine what happened, your verdict for fraud must be for the Kellenbargers.

{¶ 136} "As previously explained, clear and convincing evidence must have more than simply a greater weight than the evidence opposed to it and must produce in your minds a firm belief or conviction about the truth of the matter.

{¶ 137} "If you find for the Oberts, you will decide from the greater weight of the evidence what amount of money will compensate them for the actual damage directly caused by the fraud.

{¶ 138} "If you find for the Oberts and award actual damages against the Kellenbargers, you may consider whether you will separately award punitive damages. If you do not find actual damage, you cannot consider punitive damages.

{¶ 139} "Punitive damages may be awarded against a party to a lawsuit as a punishment to discourage others from committing similar wrongful acts. You are not required to award punitive damages to the Oberts, and you may not do so unless you find by clear and convincing evidence that the Kellenbargers acted with actual malice. Actual malice is a conscious disregard for the rights of other persons that has a great probability of causing substantial harm.

{¶ 140} "If you award punitive damages, the amount should be fair and reasonable under all the facts and circumstances. It should neither be excessive nor influenced by passion, sympathy or prejudice.

{¶ 141} "Substantial means major or of real importance, of great significance, and not trifling or small.

{¶ 142} "If you decide Kellenbargers are liable for punitive damages, you must also decide whether or not they are liable for the attorney's fees of counsel employed by the Oberts in the prosecution of this action. If you decide that the Kellenbargers are liable for those attorney's fees, the court will determine the amount."

{¶ 143} After being instructed that they must find actual malice before awarding punitive damages, the jury awarded $0 in punitive damages. The jury further circled "yes" to indicate their recommendation for an award of attorney fees. However, having determined that there were no punitive damages (and, thus, no actual malice), the trial court could not award attorney fees. Similarly, the trial court could not invade the province of the jury by awarding nominal punitive damages, which would in effect be a finding of actual malice, in order to permit the collection of attorney fees.

{¶ 144} Finally, the Oberts argue that although the jury awarded $0 in punitive damages, there was sufficient evidence to support a finding in favor of punitive damages. In response, the Kellenbargers argue that while there is evidence in the record to support a jury verdict for punitive damages, there is also evidence in the record upon which the jury could return a verdict not awarding punitive damages.

{¶ 145} As we previously stated, in establishing a claim for punitive damages in an action for fraud, the plaintiff must demonstrate, in addition to proving the elements of the tort itself, " 'that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious.' " *Davis v. Sun Refining & Marketing Co.*, 109 Ohio App.3d 42, 58,

671 N.E.2d 1049, quoting *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12 Ohio St.3d 241, 12 OBR 322, 466 N.E.2d 883, paragraph three of the syllabus.

{¶ 146} During the trial, Michael Obert testified that Martin Kellenbarger walked him around the property, showed him the iron pins for the property boundaries, and advised him that the property included the two acres in dispute. He testified that he hired George Beiter to perform a survey of the property and that Beiter advised him that the iron survey pins had been moved without his authorization. He testified that Mr. Kellenbarger showed him the location of the septic system and a y-box for the separation of the leach system. He testified that Mr. Kellenbarger said that the septic tank was located underground in the area between the barn and a large poplar tree. He testified that Mr. Kellenbarger told him that he had purchased the biggest septic tank he could buy and that it was a faultless septic system.

{¶ 147} Additional evidence presented established that on two separate residential property forms, the Kellenbargers indicated that they had a septic system servicing the property, which included a leach field, that they did not know the date of the last septic-system inspection, and that they were unaware of any current leaks, backups, or other material problems with the septic system servicing the property. However, the Kellenbargers did not check the boxes on the residential disclosure forms that would have indicated that their property was serviced with a septic tank, a private sewer, or that they had a general knowledge of the type of septic system that serviced the property. Finally, on the forms, the Kellenbargers certified that there were no boundary disputes involving the property.

{¶ 148} Mr. Kellenbarger testified that he purchased the property in 1975 and that the iron pipes are in their original positions. He testified that he built a house on the property and applied for a well and septic-system permit. He testified that he paid for a septic system and believed that it had been installed by the builder, Mr. Henman, and inspected. He testified that he had no knowledge of sewage being pumped through a pipe onto the Wagoners' property. He testified that he and the prior adjacent property owners, Jeff and LuAnne McCandish, met and discussed the property line and mutually agreed on a location for a fence that was installed on the boundary in dispute in 1976. He testified that he built a shed and dog kennel and maintained and believed that he owned the property in dispute. He testified that the Wagoners visited his home and never claimed to own the area within the fence.

{¶ 149} Based upon the record, we find that there was evidence presented upon which the jury could have reasonably found that the Kellenbargers did not act

with malice or ill-will and/or commit wrongdoing that was particularly gross or egregious.

{¶ 150} Accordingly, the trial court did not abuse its discretion in denying the Oberts' request to reopen the judgment and award nominal punitive damages. Accordingly, we find that the trial court did not abuse its discretion in denying the Oberts' motion for a JNOV.

{¶ 151} The Oberts' second assignment of error in the cross-appeal is not well taken and is hereby overruled.

### III

{¶ 152} In the third assignment of error in the cross-appeal, the Oberts argue that the trial court abused its discretion in denying their motion for a new trial relative to the issue of the Kellenbargers' liability for punitive damages.

{¶ 153} The Oberts argued that they were entitled to a new trial based upon the provisions in "Civ.R. 59(A)(5), (6), (7) and (9) and also based on the discretion of the court for good cause shown."

{¶ 154} Civ.R. 59(A) sets forth the grounds for a new trial and states as follows:

{¶ 155} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds;

{¶ 156} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for injury or detention of property;

{¶ 157} "(6) The judgment is not sustained by the weight of the evidence; however only one new trial may be granted on the weight of the evidence in the same case;

{¶ 158} "(7) The judgment is contrary to law;

{¶ 159} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;

{¶ 160} "In addition to the above grounds, a new trial may be granted in the sound discretion of the court for good cause shown."

{¶ 161} Pursuant to Civ.R. 59(A)(6), the Oberts argue that the jury's award of $0 in punitive damages is against the manifest weight of the evidence. For the reasons set forth in this opinion with regards to the Oberts' second assignment of error, we do not find the verdict to be against the manifest weight of the evidence.

{¶ 162} Pursuant to Civ.R. 59(A)(5), the Oberts argue that the jury's decision granting $0 in punitive damages and recommending the grant of

attorney fees, which can't be awarded without punitive damages, leads to an inadequate recovery because they are not able to recover attorney fees in this case, which were significant, i.e., in excess of $25,000.

{¶ 163} Pursuant to Civ.R. 59(A)(7), the Oberts argue that the trial court's judgment award on the fraud claim is contrary to law based upon the inconsistency in the interrogatories. Specifically, the Oberts argue that pursuant to Civ.R. 49(B), there are essentially three remedies available when an answer to an interrogatory is inconsistent with the general verdict. The trial court may (1) return the jury for further consideration of its answer, (2) enter judgment in accordance with the answer, or (3) order a new trial. In response, the Kellenbargers argue that the verdict and the interrogatories are not inconsistent.

{¶ 164} In the verdict form, the jury found in favor of the Oberts and against the Kellenbargers on the fraud claim. Additionally, in the verdict form, the jury awarded the Oberts $0 in punitive damages. In the jury interrogatory, the jury awarded the Oberts $0 in punitive damages. These findings are not inconsistent. Having denied an award of punitive damages, the trial court cannot proceed to award attorney fees. See *Columbus Fin., Inc. v. Howard* (1975), 42 Ohio St.2d 178, 71 O.O.2d 174, 327 N.E.2d 654; see also *Maynard v. Eaton Corp.*, Marion App. No. 9–03–48, 2004-Ohio-3025, 2004 WL 1302314. Therefore, the trial court's decision is not contrary to law. Additionally, because the trial court is not permitted to award attorney fees, the verdict does not lead to an inadequate recovery.

{¶ 165} Pursuant to Civ.R. 59(A)(9), the Oberts argue that the trial court erred and that they are entitled to a new trial because the trial court did not address the inconsistencies in the verdict at the time of trial.

{¶ 166} In the trial court's April 18, 2007 judgment entry, the trial court stated that "[b]y answering the question on the interrogatory concerning the award of attorney fees in the affirmative, the Oberts claim that the jury's verdict is 'inconsistent' and that the Court should have addressed the 'inconsistency' with the jury. However, this court believes that to have done so would have invaded the province of the jury."

{¶ 167} As previously stated, the Supreme Court of Ohio has determined "that a litigant does not have a right to trial by jury to determine the amount of attorney fees." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 557, 644 N.E.2d 397.

{¶ 168} Finally, the Oberts argue that the trial court abused its discretion in not granting a new trial for good cause shown, good cause being all the issues previously addressed. Specifically, the Oberts argue that "[b]arring any directive for the issuance of a JNOV, the only way that legal uncertainty concerning the

Oberts' right to use the two acres of land in dispute which are legally titled to the Wagoners, and to give any meaning to the jury's interrogatories and verdict statements that the Kellenbargers should be responsible for the Oberts' attorney's fees is through an order for new trial." For the reasons stated above, we do not find that good cause was shown for a new trial.

{¶ 169} For these reasons, we find that the trial court did not abuse its discretion in overruling the Oberts' motion for a new trial. The Oberts' third assignment of error is not well taken and is hereby denied.

## IV

{¶ 170} In the fourth assignment of error on cross appeal, the Oberts argue that the jury's verdict and the trial court's judgment filed on April 18, 2007, are against the manifest weight of the evidence. The Oberts incorporated by reference the arguments set forth in assignment of error number one. Essentially, the Oberts reiterate their argument that the denial of punitive damages and a recommendation that attorney fees be granted are inconsistent and that the decision with regard to punitive damages is against the manifest weight of the evidence.

{¶ 171} For the reasons previously stated in the first, second, and third assignments of error, we do not find the verdict to be against the manifest weight of the evidence. Accordingly, the Oberts' fourth assignment of error is not well taken and is hereby overruled.

## V

{¶ 172} In the fifth assignment of error in the cross-appeal, the Oberts argue that the trial court abused its discretion in permitting the introduction of the mortgage survey. Specifically, the Oberts argue that pursuant to Ohio Adm.Code 4733–38–01, a mortgage survey is solely for the intent of and use by the mortgagee and/or the title insurer. Furthermore, the Oberts argue that there was no evidence presented at trial to establish that the Oberts ever saw the mortgage survey and/or that they were asked to initial it.

{¶ 173} Decisions regarding the admission of evidence are within the sound discretion of the trial court and may not be reversed absent an abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 407 N.E.2d 490. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 174} In the case sub judice, the evidence established that the mortgage-survey costs appeared on the closing statement. Testimony was presented that generally buyers are requested to initial the mortgage survey. The Oberts testified that they never received or viewed the survey. Assuming arguendo that the trial court erred in allowing the introduction of the mortgage survey, the appellants have failed to establish how the introduction of the mortgage survey affected the jury's verdict in favor of the Oberts.

{¶ 175} For these reasons, we find that the trial court did not abuse its discretion in admitting the mortgage survey into evidence. The Oberts' fifth assignment of error is not well taken and is hereby overruled.

{¶ 176} The judgment of the Fairfield County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

FARMER, J., concurs.

HOFFMAN, P.J., concurs in part and dissents in part.

HOFFMAN, Presiding Judge, concurring in part and dissenting in part.

{¶ 177} I concur in the majority's thorough and well-reasoned analysis and disposition of appellants and cross-appellees' three assignments of error. I further concur in the majority's analysis and disposition of appellees and cross-appellants' cross-appeal, except for its decision to deny the Oberts a new trial because of the inconsistency between the jury's $0 verdict on the Oberts' claim for punitive damages and its recommendation to award the Oberts attorney fees.

{¶ 178} Although I agree that a jury does not have the right to determine the amount of attorney fees, the jury does have a right to recommend an award of them. Having been instructed that attorney fees are allowable if it awards punitive damages, I believe the trial court erred in not implementing the remedies available under Civ.R. 49(B) to resolve the inconsistency. I find the proper remedy now to be a new trial under Civ.R. 59(A).

{¶ 179} Accordingly, I dissent from the majority's decision to overrule appellees and cross-appellants' third assignment of error.