[Cite as *Shadle v. Morris*, 2013-Ohio-906.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THOMAS J. SHADLE, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiffs-Appellants | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 2012CA00073 |
| ANTHONY M. MORRIS | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court of
Common Pleas, Case No. 2011CV01826

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: February 25, 2013

APPEARANCES:

For Appellants:

MEGAN J. FRANTZ OLDHAM
220 Market Ave. S.
Eighth Floor
Canton, OH 44702

For Appellee:

MATTHEW P. MULLEN
158 North Broadway
New Philadelphia, OH 44663

*Delaney, P.J.*

{¶1} Plaintiffs-Appellants Thomas and Kathleen Shadle appeal the trial court's decision to deny their motion for directed verdict and post-dispositive motion for a new trial or judgment notwithstanding the verdict in this personal injury action. Defendant-Appellee is Anthony M. Morris.

## FACTS AND PROCEDURAL HISTORY

{¶2} On June 13, 2011, the Shadles filed a complaint against Morris in the Stark County Court of Common Pleas. The complaint alleged Morris negligently caused an automobile collision in which they were involved, proximately caused Thomas Shadle to suffer a herniated disc, and caused Kathleen Shadle loss of consortium.

{¶3} The matter went to a jury trial. At trial, the parties stipulated to Morris's negligence in causing the automobile accident. The matter in dispute was whether Morris's negligence was the proximate cause of Thomas Shadle's injury and resulting surgery. The following evidence was adduced at trial.

{¶4} On Friday, January 8, 2010, at approximately 2:40 p.m., the Shadles were exiting the parking lot of Belden Village Mall in their 2002 Honda Accord. It was a cold, snowy afternoon. Kathleen Shadle was driving and Thomas Shadle, then 54 years old, was in the passenger seat. He was wearing his seat belt.

{¶5} The Shadles were stopped at the red light at the intersection, waiting to turn right onto Everhard Road. Anthony Morris was driving his 2001 Hyundai Tiburon and stopped directly behind the Shadles' vehicle. When their vehicle pulled forward, Morris proceeded forward and then applied the brakes to stop, but slid in the snow and rear-ended the Shadles' vehicle. The Shadles described the impact as a hard jolt.

Morris estimated he was driving at a speed of less than five miles per hour at the time of the accident and described the impact as a "bump".

{¶6} The parties exited their vehicles to observe the damage. Upon exiting the vehicles, Morris asked the Shadles if they were injured based on Morris's training as an emergency medical technician. The Shadles denied any injuries and they looked at the damage to the cars. There was not any observable damage to the cars. Morris asked if they would not call the police because he was late for work. The Shadles chose to call the police to make a report. The police arrived, a report was made, and the parties went on their way.

{¶7} While at the time of the accident Thomas Shadle did not feel he suffered any injury, he woke up on Saturday, January 9, 2010 with pain in his neck that radiated down his left arm causing numbness and tingling. Thomas Shadle decided not to visit the emergency room over the weekend but waited to make an appointment with OMNI Orthopedics on Monday.

{¶8} Thomas Shadle saw Dr. Daniel Dorfman of OMNI Orthopedics on Tuesday, January 12, 2010. Thomas Shadle described his pain as pain in his neck and upper back with some radiation into his left arm with a sense of tingling in the left arm. Dr. Dorfman prescribed pain medication and physical therapy. When the pain medication and physical therapy did not abate Thomas Shadle's discomfort, Dr. Dorfman ordered an MRI and an EMG nerve conduction test.

{¶9} Thomas Shadle worked as a self-employed IT consultant. At the time of the accident, he did not have any active contracts but was obtaining professional certifications, attending college to upgrade his computer skills and looking for work

opportunities. Due to the tingling and numbness in his left arm, he did not feel he could comfortably work on the computer. He felt the electricity from the computer and other large appliances exacerbated the tingling in his arm. He was not able to assist his wife at home or participate in his regular activities.

{¶10} Thomas Shadle had the MRI done on February 8, 2010. The MRI showed he had a C7-T1 herniated disc with impingement of the left C8 nerve root, the nerve between the C7 and T1 vertebrae. The EMG nerve conduction test was performed on February 11, 2010 and showed left C8 radiculopathy, inflammation of the nerve. Based on the test results, Dr. Dorfman referred Thomas Shadle to Dr. Mark Cecil, an orthopedic surgeon with OMNI Orthopedics. Dr. Cecil recommended a a cervical discectomy and fusion of C7-T1 to relieve Thomas Shadle's symptoms.

{¶11} Dr. Cecil performed the surgery on March 5, 2010. After the surgery, Thomas Shadle felt relief from the pain, numbness, and tingling he felt prior to the surgery. Thomas Shadle incurred medical bills approximately in the amount of $38,000.00.

{¶12} About five months after the surgery, Thomas Shadle found employment as an IT consultant in Minnesota and at the time of trial, he had moved to California to become a data base administrator for Kaiser Permanente.

{¶13} Dr. Cecil testified at trial by videotape deposition as plaintiff's medical expert. Dr. Cecil is board certified in orthopedic surgery and is a clinical instructor at the Northeastern Ohio University College of Medicine. Dr. Cecil testified that pain, numbness, and tingling in the arm were classic symptoms of a herniated disc putting pressure on a nerve. Dr. Cecil testified to a reasonable degree of medical probability

the collision proximately caused Thomas Shadle's herniated disc and resulting surgery. In order to make that determination, Dr. Cecil considered four factors. First, it did not appear to Dr. Cecil from his records that Thomas Shadle complained of arm pain, numbness, tingling, and neck pain symptoms before the injury. Second, he believed the 5 mph or less impact of Morris's vehicle was enough to cause the injury. Third, Dr. Cecil was of the opinion the disc herniation was an acute injury in that it likely occurred six weeks before the EMG nerve conduction test. Fourth, while Thomas Shadle had degenerative conditions within his neck, Dr. Cecil believed the disc herniation was relatively new. This disc degeneration was worn at levels typical for Thomas Shadle's age. The disc herniation was a soft disc herniation that indicated to Dr. Cecil it was a new injury.

{¶14} On cross-examination, Dr. Cecil testified to the degenerative disc disease. Dr. Cecil described degenerative disc disease as a normal consequence of aging and was extensive because Shadle had multiple levels involved, but was consistent with his age. In cross-examining Dr. Cecil, defense counsel referred to Shadle's medical chart. The cervical films of Shadle showed extensive spondylosis, meaning degenerative change within the spine. Shadle also had "osteophytic spurring," which are bony projections that occur around the discs as the discs wear out. Dr. Cecil testified those things could be independent pain generators. Dr. Cecil stated that Thomas Shadle told him he never had neck pain before the accident. Later, Dr. Cecil testified Shadle indicated he never had a tremendous component of neck pain in the past. Dr. Cecil's records did not show that Shadle had previous arm tingling or numbness before the accident.

{¶15} Thomas Shadle's MRI showed "spondylitic protrusions" at C3-4, which Dr. Cecil interpreted as disc protrusions or degeneration:

Q. It means the disk is flattening out and bulging, right?

A. That would be a good description.

Q. And this jelly doughnut concept that you brought up on direct, disks flatten out, and eventually a lot of times, that can lead to a disk herniation with or without trauma. Would you agree with that?

A. It can.

(Videotaped Deposition of Mark Cecil, M.D., p. 30.)

{¶16} Defense counsel questioned Dr. Cecil as to his conclusion of the time the injury occurred:

Q. And with an MRI film, you can't look at that and tell how long a disk herniation has been there. Is that true?

A. You can generally tell. In other words, you can separate acute from chronic. You can do that. Can you tell specifically in terms of days? No, you can't tell that.

Q. How about months?

A. I think you can get a general idea. Again, as I said, you know, you can say, you know, three months generally. But, again, you got to correlate this as well with symptoms.

Q. I assume –

A. Because there are a lot of herniated disks that don't – aren't symptomatic.

Q. That's true. And I assume then that – that you certainly could tell on an – an MRI if it's been years?

A. You could have a good – a pretty good idea, yes.

Q. I – you may not remember this, but I had deposed you back in 2004 in a case where you were testifying for the plaintiff. And I asked you that very same question. I – I just want to show you this. (Indicating.)

MS. FRANTZ OLDHAM: Objection

* * *

Q. And I want to show you a question that I ask you: "And would it be fair to say that when you're looking at an MRI you can't really tell how long the herniated disk has been there, whether or not it hurts for the most part, or what caused it. Would that be a fair statement?" And could you look at your response?

A. I got to read it a little bit in context here, but I'll – my response is, and then I'll – let's see: "Yeah, I don't think – I don't think you can specifically. You can tell generally. In other words, if something has been there long term, chronically, versus something that's relative new, but in terms of pinning it down to months or years I would say that's a fair statement." That's pretty much what I just told you.

Q. You had just told me that you can tell months, like three months or so, but here you said months or years you can't; is that right?

***

A. Three months.  I think that's very consistent to what I was – I – I think that there's absolutely nothing in what I said there that's different than what I just told you.

(Videotaped Deposition, p. 35-37.)

{¶17} On cross-examination, Dr. Cecil also admitted he did not read the police report about the accident or view photographs of the accident, showing the lack of damage to the vehicles.  Dr. Cecil was not aware that no one reported an injury at the accident scene.

{¶18} On re-direct examination, Dr. Cecil opined degenerative disk disease and bone spurs did not cause Mr. Shadles' pain, but instead was caused by the herniated disk, which was undisputedly resolved by the surgery performed by Dr. Cecil.

{¶19} In the defense's case, only Morris testified.  No medical expert testified in the defendant's case.  At the close of Morris's case in chief, the Shadles moved for a directed verdict on the issue of causation.  The trial court denied the motion.

{¶20} On December 28, 2011, the jury returned a verdict in favor of the Shadles as to negligence.  The jury, however, determined by jury interrogatory that Morris's negligence was not the proximate cause of Thomas Shadle's injuries.  The jury awarded the Shadles zero damages.

{¶21} The Shadles filed a Motion for Judgment Nothwithstanding the Verdict and a Motion for New Trial.  The trial court denied the motions on March 20, 2011.  It is from these decisions the Shadles now appeal.

**ASSIGNMENTS OF ERROR**

{¶22} The Shadles raise two Assignments of Error:

{¶23} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW DENYING APPELLANTS' MOTION FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT WHEN THERE WERE NO OBJECTIVE REASONS TO DISCOUNT THE ONLY EXPERT TESTIMONY THAT THE COLLISION PROXIMATELY CAUSED MR. SHADLE'S HERNIATED DISC.

{¶24} "II. THE TRIAL COURT ABUSED ITS DISCRETION DENYING APPELLANTS' MOTION FOR NEW TRIAL WHEN THE JURY AWARDED $0 AND THERE WERE NO OBJECTIVE REASONS TO DISCOUNT THE ONLY EXPERT TESTIMONY THAT THE COLLISION PROXIMATELY CAUSED MR. SHADLE'S HERNIATED DISC."

## ANALYSIS

### *I.*

{¶25} The Shadles argue in their first Assignment of Error the trial court erred in denying their motion for directed verdict and motion for judgment notwithstanding the verdict.

{¶26} Civ.R. 50(B) governs motions for judgment nothwithstanding the verdict:

Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his

motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial.

{¶27} The standard for granting a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998). Judgment notwithstanding the verdict is proper if upon viewing the evidence in a light most favorable to the nonmoving party and presuming any doubt to favor the nonmoving party, reasonable minds could come to but one conclusion, that being in favor of the moving party. *Wagoner v. Obert*, 180 Ohio App.3d 387, 401–402, 2008–Ohio–704,1905 N.E.2d 694 (5th Dist.), citing *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002–Ohio–2842, 769 N.E.2d 835, ¶ 3. "Neither the weight of the evidence nor the credibility of the witnesses is for the [trial] court's determination in ruling upon [a JNOV]." *Osler v. Lorain,* 28 Ohio St.3d 345, 347, 504 N.E.2d 19 (1986), quoting *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).

{¶28} The decision to grant or deny a Civ.R. 50(B) motion for judgment notwithstanding the verdict is reviewed de novo by an appellate court. *Wagoner*, *supra*, at 401, 905 N.E.2d 694, citing *Osler, supra*, at 347, 504 N.E.2d 19.

{¶29} In regard to the Shadles' argument regarding a directed verdict, our standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. *Brown v. Guarantee Title & Trust/Arta*, 5th Dist.No. 94–41, 1996 WL 488004 (Aug. 28, 1996), citing *Sanek v. Duracote Corp.*, 43 Ohio St.3d 169, 172, 539 N.E.2d 1114 (1989). A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. *Howell v. Dayton Power & Light Co.*, 102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961 (4th Dist.1995).

{¶30} The Shadles argue Dr. Cecil presented uncontroverted evidence the car accident negligently caused by Morris was the proximate cause of Thomas Shadle's injury and resulting surgery. Therefore, the jury could only have concluded that the Shadles established the element of proximate cause. This Court has held:

> A jury is free to accept or reject any or all of the testimony of any witness, including testimony of an expert witness. *Weidner v. Blazic* (1994), 98 Ohio App.3d 321, 335. Further, even when the evidence is undisputed, the jury possesses the inherent right to reject the evidence presented. *Krauss v. Kilgore* (July 27, 1998), Butler App. No. CA-97-05-

099, unreported, at 15, citing *Lantham v. Wilson* (Aug. 12, 1991), Madison App. No. CA90-11-024, unreported.

*Gerrick v. Anheuser Busch Co.*, 5th Dist. No. 2000CA00140, 2000 WL 1838903 (Dec. 11, 2000), *2.

{¶31} The Shadles agree with that statement of law, but refer this Court to the proposition that states, "where expert testimony is not directly controverted by the opposing party's evidence, the jury is not required to accept the testimony so long as the record contains objectively discernible reasons upon which the jury could rely to reject the expert's opinion testimony." *Croft v. State Farm Mut. Auto. Ins. Co.*, 3rd Dist. No. 1-01-72, 2002 WL 18665 (Jan. 8, 2002) *3. In further support, the Shadles argue that, "* * *while a finder of fact is vested with the power to decide the credibility of witnesses, a finder of fact must accept unrefuted testimony as true unless there are objective reasons that appear in the record to show that a reasonable basis existed to support the fact finder's determination that the testimony was not credible. *Wamer v. Pfaff* (Mar. 31, 1998), Lucas App. No. L-97-1234, unreported (citing *State v. Brown* (1983), 5 Ohio St.3d 133, 449 N.E.2d 449; *Bailey v. Emilio C. Chu, M.D., Inc.* (1992), 80 Ohio App.3d 627, 610 N.E.2d 531, *State v. Nivert* (Oct. 18, 1995), Summit App. Nos. 16806, 16843, unreported; and *Muncy v. Jones*, (Jan. 19, 1984), Franklin App. No. 83AP-562, unreported.)" *Steusloff v. Steusloff*, 6th Dist. No. WM-98-021, 1999 WL 576041 (Aug. 6, 1999), *8.

{¶32} The Shadles argue Dr. Cecil's testimony that the collision proximately caused Thomas Shadle's herniated disc was unrefuted. Further, there were no objective reasons in the record as to why Dr. Cecil's testimony was not credible. They

state the uncontroverted evidence shows the EMG nerve conduction test revealed an acute injury; the MRI revealed a soft disc herniation which showed it was an acute injury; Thomas Shadle did not complain of tingling and numbness down his left arm prior to collision; and the impact of the collision could have caused the disc herniation.

{¶33} Morris contends the evidence presented by the Shadles was not uncontroverted. Through cross-examination, Morris caused the jury to question the conclusion that the injuries were the result of the accident. "[A] defendant is not obligated to put on testimony about the cause of an injury or to provide an alternative theory about causation. Defendants can avoid a directed verdict on this subject through cross-examination, presentation of contrary evidence that the negligence was not the probable cause of the injury, or presenting evidence of alternative causes of the injury. *Stinson v. England* (1994), 69 Ohio St.3d 451, 456-457, 633 N.E.2d 532, 538. Id. at 569." *Gerrick, supra* at *2 citing *Werth v. Davies*, 120 Ohio App.3d 563, 569, 698 N.E.2d 507 (1st Dist.1997).

{¶34} The Eleventh District Court of Appeals analyzed the meaning of "uncontroverted" in *McWreath v. Ross*, 179 Ohio App.3d 227, 2008-Ohio-5855, 901 N.E.2d 289. In that case, the issue was whether the trial court erred in granting a motion for a new trial where the jury awarded zero damages in a personal injury case. The court stated:

> We recognize that the term of art "uncontroverted" is not limited to refer to a failure of the defending party to provide a rebuttal expert witness. As the court stated in *McCabe v. Sitar*, 7th Dist. No. 06 BE 39, 2008-Ohio-3242, 2008 WL 2583737, ¶ 23:

"When the evidence is 'uncontroverted,' the record reflects that there is no rebuttal evidence at all, looking at the entire range of evidence presented at trial. 'Rebuttal evidence' is evidence that explains, repels, counteracts, or disproves facts given in evidence by the adverse party. *Nickey v. Brown* (1982), 7 Ohio App.3d 32, 35 [7 OBR 34], 454 N.E.2d 177. If only one expert testifies, cross-examination of that expert may very well reveal contradictions and even repudiations of earlier statements made by the expert. Inconsistencies and errors in an expert's testimony may qualify as rebuttal evidence. *State v. Thompson* (1987), 33 Ohio St.3d 1, 11, 514 N.E.2d 407."

*Id.* at ¶ 82-83.

{¶35} Morris argues that through cross-examination, he provided rebuttal evidence to Dr. Cecil's conclusion that the injury was caused by the accident. First, Dr. Cecil testified that Thomas Shadle had pain in his neck prior to the accident. Second, Dr. Cecil could not say the impact from the low speed, rear-end accident could cause the injury because Dr. Cecil was not an expert in biomechanics, he did not review the accident report, or view photographs of the accident scene. Third, Dr. Cecil's opinion that he could determine the injury was acute was called into question by Dr. Cecil's prior testimony as to a similar question.

{¶36} The Shaldes argue there were no objective reasons in the record to support the jury's decision to find Dr. Cecil's testimony as to causation was not credible. The evidence, they state, was "uncontroverted." The standard of review on a motion for directed verdict and a motion for judgment notwithstanding the verdict is,

when reviewing the evidence in a light most favorably to the non-moving party, reasonable minds can reach only one conclusion, and that is in favor of the moving party. "A motion for judgment notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict." *Chambers v. Jenkins*, 5th Dist. No. 2007 CA 00131, 2008-Ohio-638, ¶ 29 citing *Krauss v. Streamo*, 5th Dist. No.2001CA00341, 2002-Ohio-4715, ¶ 14. In making that decision, however, the court is unable to consider credibility of the witnesses or the weight of the evidence. We consider the issue only as to questions of law. It is on this basis that the evidence presented must be "uncontroverted" in order to grant a directed verdict or judgment notwithstanding the verdict.

{¶37} The Shadles state there was no conflict in the evidence as to the causation of Thomas Shadle's herniated disc. Upon our de novo review, we find the trial court did not err in denying the motion for directed verdict or for judgment notwithstanding the verdict. When reviewing the evidence without considering the credibility of the witnesses or the weight of the evidence, we cannot say, as the trial court held in its judgment entry, there was uncontroverted evidence as to causation. Through cross-examination, Morris raised issues that could cause reasonable minds to reach differing conclusions as to causation. Shadle suffered from degenerative disc disease and had neck pain before the accident. Through cross-examination, Morris called into question Dr. Cecil's ability to determine when the soft disc herniation occurred. The accident was a low-speed impact with no property damage and Dr. Cecil was not an expert in biomechanics. Dr. Cecil also testified that a disk herniation can occur with or without trauma or maybe asymptomatic for a period of time

(although these opinions were expressed, without objection, in terms of possibility and not probability).

{¶38} It is for these reasons we affirm the trial court's decision to deny the directed verdict as to causation and to deny the motion for judgment notwithstanding the verdict. Reasonable minds could come to differing conclusions as to causation.

{¶39} The Shadles' first Assignment of Error is denied.

*II.*

{¶40} The Shadles argue in their second Assignment of Error the trial court erred in denying their motion for new trial. We disagree.

{¶41} Civ.R. 59 provides in pertinent part:

**(A) Grounds**

A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

(2) Misconduct of the jury or prevailing party;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

(7) The judgment is contrary to law;

(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.

{¶42} The question of whether to grant a new trial upon the basis of the weight of the evidence is within the sound discretion of the trial court. *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 286, 291 N.E.2d 739 (1972); see, also, *Rhode v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970). The Ohio Supreme Court has consistently held the term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *See*, e.g. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶43} In order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, *cannot be reconciled with the*

*undisputed evidence in the case,* or *is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim. Bailey v. Allberry*, 88 Ohio App.3d 432, 435, 624 N.E.2d 279 (2nd Dist.1993) (emphasis in original).

{¶44} Thus, in reviewing a motion for a new trial, we do so with deference to the trial court's decision, recognizing that "the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the surrounding circumstances and atmosphere of the trial." *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1994).

{¶45} The Shadles argue that a new trial should be ordered because the jury erred in its finding on causation. Again they argue the evidence was uncontroverted as to causation. In examining this Assignment of Error, witness credibility and weight of the evidence come into play. It is well-established that when there is a conflict in the testimony on any subject, the question is one for the trier of fact. *Suggs v. Looby* 5th Dist. No. 2011 CA 00023, 2011-Ohio-4533, ¶ 21 citing *Barnett v. Hills* (App.1947), 79 N.E.2d 691, 50 Ohio Law Abs. 208, 212. As the trier of fact in this case, the jury was "free to accept or reject any or all of appellant's evidence relating to * * * damages." *Peck v. Ryan* 12th Dist. No. CA87-09-120, 1998 WL 71614 (June 30, 1988) at 4. Moreover, even assuming that appellant presented undisputed evidence, the jury possessed the inherent power to reject the evidence presented. *Lanham v. Wilson* 12th Dist. No. CA90-11-024, 1991 WL 153193 (Aug. 12, 1991). A jury is free to reject any evidence and is not required to accept evidence simply because it is uncontroverted, unimpeached or unchallenged. *Ace Steel Baling, Inc. v. Portefield*, 19 Ohio St.2d 137, 138, 249 N.E.2d 892 (1969).

{¶46} A jury's award is supported by some competent, credible evidence going to the essential elements of the case, that award will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). In the area of damages in a personal injury case, neither a reviewing court nor a trial court can substitute its judgment for that of the jury. *Litchfield v. Morris*, 25 Ohio App.3d 42, 44, 495 N.E.2d 462 (10th Dist. 1985).

{¶47} Dr. Cecil testified that Thomas Shadle suffered degenerative disc disease in his neck consistent with his age. On cross-examination, Morris was able to establish that Thomas Shadle suffered neck pain before the accident. Dr. Cecil also stated on cross-examination that with disc degeneration, a disc herniation could occur without or without trauma. There were no medical records presented or testimony on cross-examination to show that Thomas Shadle felt tingling, numbness, and pain in his left arm before the accident. The evidence presented by Dr. Cecil's testimony was that tingling, numbness and pain in the arm are symptomatic of radiculopathy, or impingement of the nerve, caused by a soft disc herniation. Dr. Cecil testified that Shadle did not complain of tingling, numbness, and pain of his left arm before the accident. As to the date of the soft disc herniation, Dr. Cecil opined it was a recent injury but whether a date of the injury could be determined in months was called into question by cross-examination.

{¶48} In denying the motion for new trial, the trial court found that Dr. Cecil's and Thomas Shadle's testimony were impeached by defense counsel to a sufficient degree to have the jury disregard the doctor, plaintiff, or both. The trial court also

found that the jury could have found the testimony of Thomas Shadle to be deficient in that the information provided to Dr. Cecil was through Thomas Shadle. In addition, Dr. Cecil did not review the accident report or pictures of the scene.

{¶49} Having reviewed the record and constrained by deference to the trial court which observed the trial testimony, we decline to substitute our judgment for that of the trial court. In this case, the jury likely disbelieved the testimony of expert or the patient, given it was a low speed collision with no damage to the vehicles. In assessing the probative value of the doctor's testimony, the jury was free to evaluate the patient's credibility to determine whether his disclosure of the level, severity and source of his neck and arm discomfort was accurate.

{¶50} We cannot say that the jury verdict was against the manifest weight of the evidence. Moreover, we find that some competent and credible evidence supports the jury's verdict. Therefore, the trial court did not abuse its discretion in denying the Shadles' motion for a new trial.

{¶51} The second Assignment of Error of the Shadles is overruled.

# CONCLUSION

{¶52} The first and second Assignment of Errors of Plaintiffs-Appellants Thomas and Kathleen Shadle are overruled.

{¶53} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Gwin, J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

PAD:kgb

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| THOMAS J. SHADLE, et al. | : | |
| Plaintiffs-Appellants | : | JUDGMENT ENTRY |
| -vs- | : | |
| ANTHONY M. MORRIS | : | Case No.   2012CA00073 |

Defendant - Appellee               :
                                                :

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellants.

 

_____

HON. PATRICIA A. DELANEY

 

_____

HON. W. SCOTT GWIN

 

_____

HON. JOHN W. WISE