[Cite as *Evans v. Hunter*, 2018-Ohio-1498.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| MICHELLE EVANS, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiffs-Appellants | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17CA61 |
| JOHN E. HUNTER | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:  Civil apeal from the Richland County Court
of Common Pleas, Case No. 2016 CV 1496

JUDGMENT:  Reversed and Remanded

DATE OF JUDGMENT ENTRY:  April 18, 2018

APPEARANCES:

For Plaintiffs-Appellants

ERIC HENRY
8440 Station Street
Mentor, OH 44060

For Defendant-Appellee

KENNETH BEDDOW
24 W. Third Street, Suite 204
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Plaintiffs-appellants Michelle and Bill Evans appeal the trial court's decision to deny their motion for directed verdict and post-dispositive motion for a new trial or judgment notwithstanding the verdict in this personal injury action. Defendant-appellee is John Hunter.

*Facts & Procedural History*

{¶2} On December 10, 2015, the Evans' filed a complaint against Hunter in the Richland County Court of Common Pleas. The complaint alleged Hunter negligently caused an automobile collision on July 28, 2015 which proximately caused Michelle Evans serious injury and caused Bill Evans loss of consortium. Hunter filed an answer to the complaint on January 21, 2016. The matter went to a jury trial. At trial, the parties stipulated to Hunter's negligence in causing the automobile accident.

{¶3} On cross-examination, Hunter testified he was going two (2) miles per hour at the time of the crash. Hunter stated he saw Michelle Evans lay down on the road and complain of back pain after the accident. He testified she looked to be in a lot of pain. Hunter admitted the accident was his fault. On direct examination, Hunter stated he is seventy-seven (77) years old, has been married for forty-six years, and is retired. He testified his airbag did not deploy during the accident.

{¶4} Dr. Zachary Gordon, the appellants' expert, ("Gordon") testified Michelle Evans had degenerative type lower back pain prior to her accident. Gordon stated he reviewed Michelle's medical records. He testified the CT scans from November 2014 and August 2015 represented a significant change. Gordon opined, to a reasonable degree of medical probability, that the crash aggravated Michelle's pre-existing back pain and

caused a herniation at L4-5. Additionally, that the surgery Michelle had in September of 2015 was necessitated by the crash.

{¶5} Bill Evans, Michelle's husband, saw Michelle at the hospital after the accident, where she complained of back pain and stated her back symptoms got worse. Bill stated he did recall Michelle having back pain for most of the year before the accident, but could not recall the dates of her previous treatments or back issues.

{¶6} After Bill Evans testified, the trial court judge informed the attorneys that one of the jurors reported that Hunter asked her, "do you wonder why, you probably wonder why I leave to go to the bathroom?" The juror told Hunter she could not talk to him and stated it did not affect her ability to be fair and impartial. The trial court asked if either party had anything to address on the issue. Counsel for the Evans' stated he did not think additional questioning of the juror was necessary and asked that the trial court remind the jurors not to speak to the parties. The trial court did remind the jurors not to speak to the parties.

{¶7} Michelle Evans testified she is a preschool assistant at Clear Fork Valley Local Schools. Michelle described the accident as a "T-bone," where her car was totaled. Prior to the crash, she had episodes of back pain several times per year and received injections. Michelle stated she saw a doctor a week to two weeks prior to the crash because she had back pain and received a spinal injection. Michelle testified that, before the accident, she was feeling pain-free. Further, that after the accident, she had instant back pain and could not walk. Defense counsel questioned Michelle about her previous back pain. Michelle admitted that in October of 2011, her back pain was a ten out of ten, even with medication, and then her pain was gone the next morning. Further, that two

weeks before the accident, she described her pain as "feels like your lower back wants to stab in half with pain." Several friends and co-workers of Michelle testified she was in pain after the accident. The Evans' requested a total damage award of $305,910.64.

{¶8} At the crux of the parties' respective arguments in this case is the testimony of defense expert, Dr. Gerald Steiman ("Steiman"). Steiman testified that while he did not examine Michelle, he reviewed her medical records from before and after the accident of July 28, 2015. Steiman stated he reviewed every page of the records, which were "about the size of 4-5 New York phonebooks," including MRI reports, CT scan reports, and actual imaging studies of the low back. Steiman testified he gave his answers based upon his training, education, and experience, to a reasonable degree of medical probability.

{¶9} Steinman testified he reviewed the following medical records: accident report, photographs of the vehicles, records of Mansfield EMS/squad report, MedCentral Mansfield hospital records, records from Mid-Ohio Emergency Services, records of Dr. Viau, orthopedic surgeon, records from OhioHealth Orthopedic Sports Medicine, Massotherapy records, records of chiropractor Dr. Sawyer, Michelle's calendar, Riverside hospital records both before and after the accident, records of Mohican Sports Medicine (rehab center), records of Summit Physical Therapy, Dublin emergency room records, Avita Pain Management records, records from Central Ohio Primary Care Physicians, records from Dr. Barwell from OhioHealth, records of Dr. Berry, chiropractor, notes of Dr. Gordon, Dr. Gordon's deposition, exhibits of Dr. Gordon's deposition, deposition of Dr. Aminian (pain manager), office records and deposition of Dr. Aminian.

{¶10} When asked his opinion, to a reasonable degree medical probability, what, if any, injury Michelle sustained as a proximate result of the accident, Steiman testified

Michelle sustained a flare-up of her pre-existing and ongoing low back discomfort. Steiman testified he reached that conclusion by reviewing the medical records, including the following: 2011 records of low back pain going back to 2011; 2014 records where Michelle saw Dr. Viau with intense low back pain requiring admission to the hospital for pain management; ER records where she received an injection; x-rays showing arthritic changes and a congenital anomaly called partial lumbarization; November 2014 CT scan showing arthritic changes and slippage of the fourth vertebral body; MRI showing abnormalities of arthritic nature and protruding discs in low back; November 2014 records noting no evidence of physical change by either the ER doctor or Dr. Viau; July 17, 2015 records of Dr. Viau noting he saw Michelle for an epidural injection; ER records after the accident with non-radiating pain and the ER doctor's release on pain medication; August 3rd records from Riverside where Michelle presented with back pain and the ER does a CT scan of the back that shows a lot of arthritic changes in the low back; and records showing Michelle went to Dr. Viau on August 5th saying the physical exam is unchanged and she had no pinched nerve.

{¶11} Steiman testified the new pain described by Michelle as occurring on August 26th was not proximately related to the accident of July 28th because there was a new finding of disc extrusion, free disc fragment, new pain, and new symptoms (foot drop, weakness) that were not there after the accident. Steiman opined, to a reasonable degree of medical probability, that the event that occurred between August 23rd and August 26th caused the extruded disc that led to her September surgery. Steiman further testified that his opinion, to a reasonable degree of medical probability, was the massage therapy, Riverside Hospital medical treatment, and Avita pain management were unrelated to the

crash and instead treatment was necessary because of the new problem that occurred on August 23rd – August 26th.

{¶12} When asked whether he had an opinion as to what treatment would have been appropriate for a flare-up of low back pain, Dr. Steiman stated that, as a result of the flare-up of low back pain, Michelle "clearly needs to go to the emergency room which she did on July 28th, goes to the ER again on August 3rd, and sees Viau on August 5th, I think those are related to the captioned motor vehicle accident." Steiman continued, "but the subsequent treatment I think is an entirely separate and new problem."

{¶13} On cross-examination, Steiman testified that, notwithstanding the fact that he did not examine Michelle, he was able to fairly render an opinion in this case because the medical records allowed him to "make a fair and clear-cut opinion." When asked whether he agreed that Michelle sustained an injury in this crash, Steiman responded, "Correct. I think she had a flare-up of her pre-existing osteoarthritic problems. They were pre-existing and ongoing." Also during cross-examination, Steiman testified as to whether he believed Michelle's testimony that she was pain-free on the date of the accident. Steiman stated that if Michelle testified she was pain-free at the time of the crash, there is a discrepancy between her testimony and what she told Dr. Viau on August 5, 2015. Steiman further testified that, according to his review of Viau's records, Michelle was not pain-free on July 28, 2015 because Viau's records state Michelle was pain-free for one week after the epidural, which was given on July 17, 2015, and the accident occurred more than one week after she was given the epidural.

{¶14} On re-direct, Steiman stated what is critical to his opinion is the notes and records of Dr. Viau, the only doctor who saw Michelle before and after the crash.

**{¶15}** At the close of Hunter's case, the Evans' moved for a directed verdict on the issue of proximate cause due to the fact that Dr. Steiman, Hunter's expert, agreed some treatment was reasonable and necessary. The Evans' sought to remove the jury verdict form finding for Hunter in its entirety and submit only the issue of damages to the jury. The trial court denied the motion. At that point, counsel for the Evans' also objected to the testimony of Hunter regarding his age.

**{¶16}** On June 20, 2017, the jury determined by jury interrogatory that Hunter's negligence did not cause Michelle Evans' injuries and entered a verdict in favor of Hunter. The jury awarded the Evans' zero damages.

**{¶17}** The Evans' made an oral motion pursuant to Civil Rule 50 for judgment notwithstanding the verdict and a motion for a new trial pursuant to Civil Rule 59(A). By judgment entry on June 26, 2017, the trial court overruled both motions. The trial court found there was sufficient evidence presented at trial from which the jurors could reasonably conclude judgment in favor of Hunter was appropriate and that their decision was not based upon passion or prejudice.

**{¶18}** The Evans' appeal from the rulings of the Richland County Court of Common Pleas and assign the following as error:

**{¶19}** "I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR A DIRECTED VERDICT ON THE ISSUE OF WHETHER MRS. EVANS HAD SUSTAINED INJURY WHEN THE ENTIRETY OF THE EVIDENCE PRESENTED SUPPORTED THAT CONCLUSION.

**{¶20}** II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND FOR A NEW

TRIAL WHERE THE JURY'S VERDICT WAS CLEARLY CONTRARY TO THE LAW AND EVIDENCE INTRODUCED AT TRIAL."

## II.

{¶21}  We find the Evans' second assignment of error is dispositive of this appeal. In their second assignment of error, the Evans' contend the trial court erred in denying their motion for judgment notwithstanding the verdict and for a new trial.

{¶22}  Judgment notwithstanding the verdict is proper if upon viewing the evidence in a light most favorable to the nonmoving party and presuming any doubt to favor the nonmoving party, reasonable minds could come to but one conclusion, that being in favor of the moving party.  *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 769 N.E.2d 835 (2002).  "Neither the weight of the evidence nor the credibility of the witnesses is for the [trial] court's determination in ruling upon [a JNOV]."  *Osler v. Lorain*, 28 Ohio St.3d 345, 504 N.E.2d 19 (1986), quoting *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 344 N.E.2d 334 (1976).  The decision to grant or deny a Civil Rule 50(B) motion for judgment notwithstanding the verdict is reviewed de novo by an appellate court.  *Id.*

{¶23}  Civil Rule 59(A) governs grounds for a new trial and states as follows:

A new trial may be granted to all or any of the parties and on all or

part of the issues upon any of the following grounds:

(4) Excessive or inadequate damages, appearing to have been given

under the influence of passion or prejudice;

* * *

(6) The judgment is not sustained by the weight of the evidence;

however, only one new trial may be granted on the weight of the

evidence in the same case; * * *

{¶24} The determination of whether to grant a new trial pursuant to Civil Rule 59(A)(4) and (6) is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 291 N.E.2d 739 (1972); *Rhode v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970). In order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damages making up the plaintiff's claim. *Shadle v. Morris*, 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906.

{¶25} Thus, in reviewing a motion for a new trial, we do so with deference to the trial court's decision, recognizing that the "trial judge is better situated than a reviewing court to pass on questions of witness credibility and the surrounding circumstances and atmosphere of the trial." *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 659 N.E.2d 1242 (1994).

{¶26} In order to determine whether passion or prejudice affected the jury's damage award the appellate court must consider: (1) the amount of the verdict and (2) whether the jury considered improper evidence, improper argument by counsel, or other inappropriate conduct which had an influence on the jury. *Dillon v. Bundy*, 72 Ohio App.3d 767, 596 N.E.2d 500 (10th Dist. 1991). To support a finding of passion or prejudice, it must be demonstrated that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities. *Pena v. Northeast Ohio Emergency*

*Affiliates, Inc.*, 108 Ohio App.3d 96, 670 N.E.2d 268 (9th Dist. 1995). There must be something contained in the record to which the complaining party can point that "wrongfully inflamed the sensibilities of the jury." *Shoemaker v. Crawford*, 78 Ohio App.3d 53, 603 N.E.2d 1114 (10th Dist. 1991). The mere size of the verdict is insufficient to establish proof of passion or prejudice. *Pearson v. Cleveland Acceptance Corp.*, 17 Ohio App. 2d 239, 246 N.E.2d 602 (8th Dist. 1969).

{¶27} The Evans' contend the testimony regarding Hunter's age, marital status, employment condition, and poor health improperly appealed to the passion and prejudice of the jury. We disagree. First, there was no information given to the jury about Hunter's health. One of the jurors reported that Hunter asked her, "do you wonder why, you probably wonder why I leave to go to the bathroom?" The juror told Hunter she could not talk to him and stated it did not affect her ability to be fair and impartial. Counsel for the Evans' stated he did not think additional questioning of the juror was necessary. Thus, none of the jurors received information about Hunter's health. Additionally, at the time of the testimony regarding Hunter's age and marital status, counsel for the Evans' did not object to the testimony. We find the brief testimony regarding Hunter's age and marital status cannot be said to be information that "wrongfully inflamed the sensibilities of the jury." Accordingly, the trial court did not abuse its discretion in denying the Evans' motion to grant a new trial pursuant to Civil Rule 59(A)(4).

{¶28} When considering a motion for new trial pursuant to Civil Rule 59(A)(6), a court must weigh the evidence and pass on the credibility of the witnesses. A new trial will not be granted where the verdict is supported by competent, substantial, and apparently credible evidence. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 876

N.E.2d 1201 (2007). Because a trial court is in the best position to decide issues of fact, it is vested with broad discretion in ruling upon motions for new trial based on Civil Rule 59(A)(6). *Id.* In order to set aside a damage award as against the manifest weight of the evidence, a reviewing court must determine the verdict cannot be reconciled with the undisputed evidence in the case. *Johnson v. Burris*, 5th Dist. Guernsey No. 14 CA 12, 2015-Ohio-260. Generally, a new trial should be granted pursuant to Civ.R. 59(A)(6) where it appears that the jury awarded inadequate damages because it failed to consider an element of damages established by uncontroverted expert testimony. *Baum v. Augenstein*, 10 Ohio App.3d 106, 460 N.E.2d 701 (10th Dist. 1983). However, if the verdict is supported by substantial, competent, credible evidence, a trial court abuses its discretion in granting a new trial based upon the weight of the evidence. *Hancock v. Norfolk & Western Ry. Co.*, 39 Ohio App.3d 77, 529 N.E.2d 937 (8th Dist. 1987).

**{¶29}** Hunter argues that, despite the uncontroverted medical evidence, there are objectively discernible reasons why the jury may have rejected all of the expert testimony, including the defense expert testimony. Specifically, Hunter contends that only by assuming Michelle's complaint of increased subjective pain after the accident was true did Steiman offer an opinion that Michelle sustained any injury as a proximate result of the accident. Further, that the only basis for Steiman finding Michelle suffered a flare-up of pre-existing back pain was her claim that she was pain-free prior to the accident.

**{¶30}** We disagree with Hunter. Steiman did not qualify, limit, or condition his opinion as being based on Michelle's subjective complaints. Steiman testified he gave his answers based upon his training, education, and experience, to a reasonable degree of medical probability. When asked what his opinion was based upon, Steiman testified

to an extensive list of medical records that he reviewed. Steiman stated he reviewed every page of this extensive list of records, including MRI reports, CT scan reports, and actual imaging studies of the low back. Steiman characterized the size of the records as "about the size of 4-5 New York phonebooks."

{¶31} Steiman stated his opinion, to a reasonable medical probability, was that Michelle sustained a flare-up of her pre-existing and ongoing low back discomfort, as a proximate result of the accident. When asked what he based this conclusion on, Steiman did not testify it was based upon Michelle's subjective complaints; rather, he specifically cited numerous medical records, including the records of Dr. Viau, ER records, x-rays, CT scans, and an MRI, that he based this conclusion on. Steiman further testified his opinion as to what treatment would have been appropriate and related to the motor vehicle accident for a flare-up of low back pain included the ER visit on July 28th, the ER visit on August 3rd, and the appointment with Dr. Viau on August 5th. Steiman did not state his conclusion was based upon Michelle's subjective complaints of increase in pain.

{¶32} On cross-examination when Steiman testified Michelle had a flare-up of her pre-existing osteoarthritic problems, he did not qualify, limit, or condition this opinion as being based upon Michelle's subjective complaints of increase in pain. Also, on cross-examination, Steiman testified that, notwithstanding the fact that he did not examine Michelle, he was able to fairly render an opinion in this case because the medical records allowed him to "make a fair and clear-cut opinion." On re-direct, Steiman noted as "critical" to his opinion the notes and records of Dr. Viau, because he was the only doctor who saw Michelle before and after the crash. Thus, the evidence in the record does not

demonstrate that Steiman offered his opinion as to Michelle's injury only by assuming Michelle's complaint of subjective increase in pain.

**{¶33}** As to Hunter's argument that the only basis for Steiman finding Michelle suffered a flare-up of pre-existing back pain was her claim that she was pain-free prior to the accident is contradicted by Steiman's testimony. On cross-examination, Steiman testified as to whether he believed Michelle's testimony that she was pain-free on the date of the accident and stated that if Michelle testified she was pain-free at the time of the crash, there is a discrepancy between her testimony and what she told Dr. Viau on August 5, 2015. Steiman testified his opinion that Michelle was not pain-free on the date of the crash was based upon his review of Viau's records, which stated Evans was pain-free for one week after the epidural on the July 17, 2015, and the accident occurred more than a week after the July 17, 2015 date. Thus, the record does not demonstrate the only basis for Steiman finding Michelle suffered a flare-up of pre-existing back pain was her claim that she was pain-free prior to the accident.

**{¶34}** We find the cases cited by Hunter to be factually distinguishable from the instant case, as they do not involve a situation in which there is uncontroverted expert testimony from both the plaintiff's expert and the defendant's expert that at least a limited portion of the medical treatment was caused by the accident. See *Shadle v. Morris*, 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906 (affirming denial of new trial when the testimony of the plaintiff's expert was impeached by defense counsel); *Pytel v. Crenshaw*, 2nd Dist Montgomery No. 25487, 2013-Ohio-3552 (finding no evidence in the record conceding the plaintiff suffered at least some type of injury as a result of the accident). In this case, unlike in the *Shadle* case, it is not only the Evans' expert, but also Hunter's

expert, who opines, based upon medical records, imaging, and clinical findings, that he was able to render a "pretty clear-cut opinion" that certain medical treatment was necessitated by the crash.

{¶35} Further, unlike the cases cited by Hunter with regards to subjective pain in which the experts specifically stated he or she based their opinions and conclusions on the plaintiff's self-reported symptoms, as detailed above, Steiman did not make any such qualifications or limitations in his testimony. *Seymour v. Pierson*, 5th Dist. Stark No. 2005CA00218, 2006-Ohio-961 (expert opinion based on appellant's subjective complaints); *Welch v. Ameritech Credit Corp.*, 10th Dist. Franklin No. 04AP-1123, 2006-Ohio-2528 (expert stated he specifically based his opinions on the plaintiff's self-reported symptoms and could not testify to a reasonable degree of medical certainty as to the injury).

{¶36} While the evidence is controverted as to the remainder of the damages claimed by Michelle, in this case, the evidence remains uncontroverted by all experts, including the defense expert, that the emergency room visit on July 28th, the emergency room visit on August 3rd, and the visit with Dr. Viau on August 5th were caused by the motor vehicle accident. Accordingly, the jury awarded inadequate damages and the verdict is not supported by competent and credible evidence because it failed to compensate Michelle for the medical treatment on July 28th, August 3rd, and August 5th. At a minimum, Michelle was entitled to compensation for the dates conceded by the defense expert and the jury clearly lost its way in rendering its verdict. See *Thomas v. Pisoni*, 5th Dist. Stark No. 2014CA00034, 2015-Ohio-376; *Enter v. Fettman*, 5th Dist. Stark No. 2005CA00023, 2005-Ohio-5525; *Hoschar v. Welton*, 7th Dist. Columbiana No.

06 CO 20, 2007-Ohio-7196; *Smith v. Peterson*, 6th Dist. Erie No. C.A. No. E-79-54, 1980 WL 35184 (Aug. 22, 1980).

{¶37} We find the trial court erred in not granting the Evans' motion for new trial pursuant to Civil Rule 59(A)(6).  Accordingly, the Evans' second assignment of error is sustained in part.

I.

{¶38} The Evans' argue in their first assignment of error that the trial court erred in denying their motion for directed verdict.  Our standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. *Sanek v. Duracote Corp.*, 43 Ohio St.3d 169, 539 N.E.2d 1114 (1989).  A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment.  *Shadle v. Morris*, 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906.

{¶39} During the trial, counsel for the Evans' made an oral motion for directed verdict on proximate cause.  When asked by the trial court whether counsel meant proximate cause on just the items Steiman testified were necessitated by the crash, counsel for the Evans' stated he sought to completely remove the issue of proximate cause from the jury and submit to them only the issue of damages.  While the testimony of Steiman and thus the uncontroverted evidence is that one specific injury and three dates of medical treatment were necessitated by the crash, Steiman's testimony also provides that many of Michelle's injuries and a large majority of the medical treatment in

this case was not proximately caused by the accident. Thus, the jury could find that at least some of Michelle's injuries were not proximately caused by the accident. Accordingly, we find the trial court did not err in denying the Evans' motion for directed verdict.

{¶40} The Evans' first assignment of error is overruled.

{¶41} Based on the foregoing, the Evans' first assignment of error is overruled. The Evans' second assignment of error is sustained in part and overruled in part. The matter is reversed and remanded to the trial court for a new trial pursuant to Civil Rule 59(A)(6).

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur